725 F.2d 627
 1984-1 Trade Cases 65,869
 Gerald D. OLMSTEAD, Jr., individually, and on behalf of all
Amoco dealers in the State of Florida,
Plaintiff-Appellant, Cross-Appellee,
v.
AMOCO OIL COMPANY, f/k/a American Oil Company, a Maryland
corporation, et al., Defendants-Appellees, Cross-Appellants.
 No. 82-5358.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 24, 1984.
 
 Duckworth, Allen, Dyer & Pettis, Herbert L. Allen, Robert Dyer, Orlando, Fla., for plaintiff-appellant, cross-appellee.
 Thomas F. Lang, Orlando, Fla., Robert C. Smith, Washington, D.C., for Amoco & Miller.
 Jack F. Durie, Jr., Orlando, Fla., for Hoffman.
 Paul B. Johnson, Gregory, Cours, Paniello, Johnson, Hayes & Hoft, Tampa, Fla., for Plaza Equip. & Lazzara.
 Appeals from the United States District Court for the Middle District of Florida.
 Before HILL and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.
 LEWIS R. MORGAN, Senior Circuit Judge:
 
 
 1
 Gerald D. Olmstead, the appellant and cross-appellee, and Amoco Oil Company, the appellee and cross-appellant, challenge a decision of the District Court for the Middle District of Florida. The facts giving rise to this case concern Olmstead's previous relationship with Amoco as lessee and operator of one of its service stations in Orlando, Florida. Olmstead began operating the station in 1969 pursuant to a one-year lease agreement which was automatically renewable unless terminated by Amoco at the anniversary date. Under the terms of the lease Olmstead paid Amoco a monthly rent based on the amount of gasoline delivered to the station. He also purchased tires, batteries, and other automobile accessories from Amoco.
 
 
 2
 Olmstead's gasoline sales began to decline in 1973 and Amoco approached him about the possibility of installing an automatic car wash on the premises in order to attract business. Amoco had begun testing and marketing a car wash program several years earlier and determined that the offer of a free car wash with a gasoline sale was a successful method of increasing business. Under the terms of the car wash program Amoco provided the physical improvements necessary for a service station to house a car wash, but the service station operator purchased the car wash itself. Amoco offered a rebate incentive on the monthly rental to help defray the cost of the equipment. Amoco's market research concluded that a car wash manufactured by Bernardi Brothers, Inc., of Harrisburg, Pennsylvania, was superior in terms of reliability, service and financing availability. Plaza Equipment Company was a distributor of Bernardi car washes in Florida and the dealer recommended by Amoco to its Florida service station operators. Unbeknownst to Amoco's higher level management, Plaza Equipment paid kickbacks to Amoco's Florida district manager for each car wash ordered by an Amoco dealer.
 
 
 3
 Olmstead decided to purchase a car wash in 1972 and again in 1973, but he cancelled the order both times. In April of 1974 Amoco terminated Olmstead's lease because of declining sales and he operated the station under two 60-day leases. In July, Olmstead and Amoco entered into a new lease agreement for a one-year term, retroactively effective April 20, 1974, with the standard automatic renewal provision on the anniversary date. In September, Olmstead ordered a Bernardi car wash from Plaza Equipment and it was installed in December. The car wash did not have a positive effect on Olmstead's gasoline sales and Amoco decided to terminate the lease on its anniversary date in April of 1976. Amoco offered to pay Olmstead for his equity in the car wash and to assume all future payments, but Olmstead refused to vacate the premises. Amoco then filed an eviction suit in the County Court of Orange County, Florida, to which Olmstead answered with general denials, an affirmative defense, and a counterclaim for damages. The counterclaim was dismissed as untimely, and Amoco was awarded possession of the property. Olmstead did not appeal from the eviction action and Amoco subsequently sold the property to a third party.
 
 
 4
 Olmstead then filed this action in federal court against Amoco, Plaza Equipment Company, and several individual employees of the two corporations. The complaint contained five counts. Counts One through Four alleged various federal and state antitrust violations against all the defendants, including an illegal tying arrangement between Amoco's leases and the purchase of a car wash, and a conspiracy between Amoco and Plaza Equipment Company to monopolize trade and competition of automatic car washes in Florida. Count Five asserted common law fraud against Amoco and sought compensatory and punitive damages. Olmstead charged that Amoco fraudulently induced him to purchase a car wash by orally promising to refrain from terminating his lease for five years. Count Five also alleged that Amoco fraudulently misrepresented the cost of the car wash. Amoco raised various defenses including res judicata and collateral estoppel arising from the state court eviction proceedings, and the Florida statute of frauds with regard to the alleged oral contract. The district judge allowed Olmstead to proceed on all five counts, but at the end of a lengthy jury trial granted Amoco's motion for a directed verdict on Counts One through Four. The jury returned a verdict in favor of Olmstead on the fraud claim and awarded $18,500 in compensatory damages, $40,000 for lost profits, and $250,000 punitive damages. Amoco then moved for j.n.o.v. or in the alternative a new trial. After holding two hearings, the trial court granted Amoco's motion for j.n.o.v. in February of 1982 as to all damages except the $18,500 compensatory award.
 
 
 5
 In this appeal Olmstead argues that the trial court erred in granting Amoco's motion for a directed verdict on his claim of an unlawful tying arrangement. Olmstead further claims that the trial court erred in granting Amoco's motion for j.n.o.v. on the jury's award for lost profits and punitive damages in connection with the fraud claim. Amoco contends that the trial court should have dismissed the fraud claim because of collateral estoppel and res judicata, or in the alternative should have granted its motion for j.n.o.v. as to the entire jury verdict. After a careful and thorough review of the various claims and the relevant law, we agree with Amoco that the trial court erred in allowing Olmstead to present the fraudulent inducement claim. We affirm on the remaining issues.
 
 
 6
 THE TYING CLAIM.
 
 
 7
 Olmstead attempted to prove at trial that Amoco violated Section 1 of the Sherman Act, 15 U.S.C. Sec. 1, by tying the sale of a car wash to its service station lease. An illegal tie "can be generally defined as an agreement under which a seller agrees to sell one product (the 'tying product') only on the condition that the buyer also purchase a second product (the 'tied product')." Kentucky Fried Chicken v. Diversified Packaging, 549 F.2d 368, 375 (5th Cir.1977). "The standard of illegality is that the seller must have 'sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product....' " United States v. Loew's, Inc., 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962), quoting Northern Pacific Railway Company v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958). The Amoco lease was the alleged tying product in this case and the car wash was the tied product. The trial judge cited three independent reasons for his decision to direct a verdict against Olmstead. First, he concluded as a matter of law that Amoco did not have any economic interest in the tied product even though one of its employees financially benefited from each car wash sale. "There is no illegal tying arrangement where a 'tying' company has absolutely no interest in the sales of a third company whose products are favored by the tie-in." Keener v. Sizzler Family Steak Houses, 597 F.2d 453, 456 (5th Cir.1979). Second, he found that Olmstead did not establish the requisite economic strength of Amoco in the relevant market. See Kentucky Fried Chicken v. Diversified Packaging, 549 F.2d at 375. Finally, the trial judge ruled that Olmstead failed to present any evidence proving damages as a result of its alleged illegal tie-in. See Kypta v. McDonald's Corporation, 671 F.2d 1282 (11th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 814, 74 L.Ed.2d 109 (1982). We need focus only on the last ruling to affirm the directed verdict.
 
 
 8
 The briefs, arguments, and record in this case demonstrate that Olmstead confused two subtly distinct types of tie-in arrangements. The most common form of tying is where a seller of one product forces its customer to purchase a second product which is necessary or useful for the customer's business. In other words, the customer is able to use the tied product but is unable to shop for the most competitive seller. See, e.g., Siegel v. Chicken Delight, Inc., 448 F.2d 43 (9th Cir.1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972) (the defendant franchisor was charged with unlawfully tying its franchise license with the purchase of its restaurant supplies). In Kypta v. McDonald's Corporation, our court articulated a precise standard for determining damages in this type of tie-in arrangement:
 
 
 9
 [I]njury resulting from a tie-in must be shown by establishing that payments for both the tied and tying products exceed their combined fair market value.... Unless the fair market value of both the tied and tying products are determined and an overcharge in the complete price found, no injury can be claimed; suit, then, would be foreclosed.
 
 
 10
 671 F.2d at 1285. The judge below ruled against Olmstead after discussing this standard and noting Olmstead's complete failure to present any evidence of the fair market value of the Amoco lease and the Bernardi car wash.
 
 
 11
 Olmstead disputes the applicability of Kypta to his claim, and argues that the correct measure of damages is the full purchase price of the Bernardi car wash since he would not have purchased a car wash absent the tie-in. According to Olmstead, evidence concerning fair market values was not crucial to his case. In support of this argument he relies on United States v. Loew's, Inc., 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962), a case which involved copyrighted materials. There, a distributor of motion pictures was found to have violated Section 1 of the Sherman Act by requiring its customers to lease inferior, unpopular films along with the film actually desired by the customer. The Supreme Court's decision in Loew's discussed in great detail the unique legal monopolies associated with copyrighted and patented materials and concluded that it would be fundamentally unfair to allow copyright and patent owners to extend their monopolies through the use of tie-ins. Absolute but legally protected monopolists should not be allowed to abuse their special status. For this reason the court held that a defendant's "economic power is presumed when the tying product is patented or copyrighted." 371 U.S. at 45, 83 S.Ct. at 102.
 
 
 12
 Olmstead argues that his claim is similar in nature to that in Loew's since he was allegedly forced to purchase an entirely unwanted product, i.e., the car wash, in order to obtain the lease he sought. He attempts to distinguish Loew's and Kypta by examining the needs and desires of the tie-in victim, and compares himself to the purchaser of unwanted goods in Loew's. We believe, instead, that Loew's is inapplicable to the present case because Amoco does not have a legally protected absolute monopoly on service station leases. We see nothing inherently wrong or evil about Amoco's insistence that its service station operators provide car washing facilities, although the same requirement coupled with a desire to benefit economically on the sale of the car wash could be unfair and illegal depending upon Amoco's economic strength and coercive abilities. Therefore, the court below properly applied the formula for measuring damages as discussed in Kypta, and finding no evidence on which to allow recovery, he properly directed a verdict in favor of Amoco.
 
 
 13
 THE FRAUD CLAIM.
 
 
 14
 Olmstead alleged in Count Five of his complaint that Amoco fraudulently induced him to purchase a car wash by orally promising not to terminate his lease for five years. Amoco responded, among other things, that the state court eviction proceeding barred this claim because of res judicata and collateral estoppel. The district court rejected Amoco's arguments and the jury returned a substantial verdict for Olmstead.
 
 
 15
 In order to review the district court's ruling on this matter it is necessary to briefly discuss what actually transpired in the state court eviction proceeding. The record in this case contains only the complaint, answer, and final judgment in the county court. Amoco brought the possessory action alleging its compliance with the termination requirements of the written one-year lease and Olmstead's refusal to vacate the premises. Olmstead's answer consisted of general denials, an affirmative defense in which he alleged that the lease rider concerning installation of the car wash expressly extended the lease for five years, and a counterclaim. The counterclaim charged that Amoco had misrepresented the purchase price of the car wash to Olmstead and also alleged breach of an oral agreement to extend the lease for five years upon Olmstead's purchase of the car wash equipment. The county court dismissed the counterclaim as "not timely filed and served" and awarded Amoco possession of the property after "having reviewed the pleadings and having heard and considered the argument of counsel...." Olmstead chose not to appeal and several weeks later filed this action in federal court.
 
 
 16
 We have no difficulty in finding that the doctrine of res judicata prevents Olmstead from seeking to enforce a five-year lease with Amoco in any suit subsequent to losing in the eviction proceeding. The decision of the county court is final and conclusive as to the right of possession. See Federated Department Stores v. Moitie, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). Likewise, there is no question that Olmstead is collaterally estopped from claiming the existence of a valid, enforceable five-year lease in a subsequent case against Amoco based on a different cause of action since the state court eviction proceeding necessarily determined the nonexistence of such a lease. See United States v. Mendoza, --- U.S. ----, 104 S.Ct. 568, 78 L.Ed.2d ---- (1984); United States v. Stauffer Chemical Company, --- U.S. ----, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984); Kaspar Wire Works, Inc. v. Leco Engineering & Machinery, Inc., 575 F.2d 530 (5th Cir.1978). More troubling to us is Olmstead's argument that his fraud claim avoids the bar established by res judicata or collateral estoppel. He argues that Amoco intentionally and fraudulently made unenforceable promises of a five-year lease in order to induce him to purchase a car wash. This claim, according to Olmstead, is not dependent on the legal right to possession, to which res judicata is applicable, or the factual existence of a valid five-year lease, which he is estopped from asserting.
 
 
 17
 While this argument may appear convincing at first glance, we are troubled with the true nature of the claim's substance. Olmstead is seeking relief for damages caused by an eviction which he must concede was lawful. Amoco legally established its right to evict Olmstead, and it strikes us as inherently inconsistent to now require Amoco to pay lost profits and other damages caused by that eviction. We believe the problem is solved by examining the full potential of the bar established by res judicata: "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Department Stores, Inc. v. Moitie, 452 U.S. at 398, 101 S.Ct. at 2427 (emphasis added). Under res judicata "the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial." Kaspar Wire Works, Inc. v. Leco Engineering & Machinery, 575 F.2d at 535. The district judge below concluded that res judicata did not extend to bar Olmstead's fraud claim since the eviction proceeding concerned a claim of right to possession and the fraud claim concerned the purchase of a car wash. We believe the trial judge too narrowly interpreted the "claim" or "cause of action" to which res judicata applies. The bar extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same "operative nucleus of fact." Lovely v. Laliberte, 498 F.2d 1261 (1st Cir.), cert. denied, 419 U.S. 1096, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974). In the present factual situation, Amoco's termination of Olmstead's lease was at the core of both the eviction proceeding and the subsequent fraud claim. Both cases would necessarily involve the issue of Amoco's alleged oral promises and the validity of the written one-year lease agreement. The purpose of res judicata is to prevent this type of repetitive litigation between the same parties. See Parklane Hosiery Company v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).
 
 
 18
 In reaching its decision on the res judicata issue, the court below noted that "this is a very close question" but concluded without further explanation that the "interests of justice will best be served" if Olmstead proceeded on the fraud claim. Since its decision, the Supreme Court has specifically rejected a general equitable or "interests of justice" exception to the rule of res judicata. Federated Department Stores, Inc. v. Moitie, 452 U.S. at 399, 101 S.Ct. at 2428. There is an established exception to the rule, however, and Olmstead vigorously argues it is applicable to this case. If the court of the first proceeding is unable to adjudicate certain claims for jurisdictional reasons, then those claims are not barred in a subsequent suit. "Judicial finality--the predicate for res judicata --arises only from a final decision rendered after the parties have been given a reasonable opportunity to litigate a claim before a court of competent jurisdiction." Kaspar Wire Works, Inc. v. Leco Engineering & Machinery, 575 F.2d at 537-38. Olmstead contends that he was unable to prosecute a fraud claim against Amoco in the county court proceeding because his claim would have exceeded the monetary jurisdiction of that court. We disagree. Florida law provides for the transfer of an action involving a counterclaim which exceeds monetary jurisdictional limits. See Neil v. South Florida Auto Painters, Inc., 397 So.2d 1160, 1163, n. 5 (3rd Fla.Dist.Ct.App.1981). Moreover, we think Olmstead's argument is inconsistent with the fact that he actually filed a counterclaim in the eviction proceedings seeking to recover the purchase price of the car wash. The counterclaim was dismissed because it was untimely filed and served, not because the court lacked jurisdiction.
 
 
 19
 Finally, we must address an issue which has "fallen between the cracks" of this case. Count Five of Olmstead's complaint alleged fraudulent inducement of the car wash purchase and fraudulent misrepresentations by Amoco as to the price of the car wash. These are separate, independent claims not involving the same operative facts. The first claim, as discussed above, is barred by res judicata. The second claim is not. By special interrogatories the jury awarded $18,500 on the first claim and $5,300 on the second. The trial judge did not enter judgment awarding any damages under the second claim, however, because he found an award of the full purchase price to include and overlap any compensatory damages for misrepresentations as to the purchase price. Record, vol. 11, at 1079-80. In other words, if Olmstead recovered the full purchase price of the car wash as compensatory damages, he simultaneously recovered any damages caused by his paying more than was represented to him as the price. On appeal, the parties have virtually ignored this matter. Amoco merely "submits" that the issue is not properly before this court since Olmstead does not challenge the district court's failure to specifically award damages under the second claim. Olmstead, on the other hand, briefly mentions that Amoco has failed to challenge his separate recovery under the second fraud theory. He also contends that the $5,300 will support the lost profits and punitive damages awarded by the jury. Neither party discusses the merits of the claim. Without a specific issue before us, the guidance of references to supporting case law, the benefit of adversarial argument, and the other qualities normally associated with appellate practice, we conclude that Olmstead is entitled to recover the $5,300 but find that the award will not support his claim for lost profits and punitive damages. The $5,300 was awarded by the jury and was an implied portion of the district court's final judgment. Amoco has failed to set forth a sound reason why it should be disturbed. At the same time, our review of the record and the special interrogatories convinces us that the jury's award for lost profits and punitive damages was based solely on the fraudulent inducement claim. Accordingly, we remand this case to the district court to enter judgment for Olmstead in the amount of $5,300.
 
 
 20
 In summary, we affirm the district court's directed verdict in favor of Amoco on the tying claim. Olmstead did not establish that he was damaged by the alleged tie-in. Furthermore, we agree with Amoco that the doctrine of res judicata barred Olmstead's claim of fraudulent inducement with regard to the car wash purchase and accordingly reverse the district court's ruling to the contrary. Olmstead is still entitled to receive $5,300 for his fraud claim with regard to the car wash price.
 
 
 21
 AFFIRMED in part, REVERSED in part, and REMANDED.