**TRUSTMARK INSURANCE COMPANY, Plaintiff,**

v.

**ESLU, INC. f/k/a Excess & Stop–Loss Underwriters, Inc., Defendant.**

**No. 6:01–CV–468–ORL–22JGG.**

United States District Court, M.D. Florida, Orlando Division.

July 31, 2001.

Jay S. Blumenkopf, Kristina B. Pett, Wendy L. Furman, Proskauer Rose LLP, Boca Raton, FL, for Trustmark Insurance Company, plaintiffs.

Robert C. Bauroth, Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, PA, Ft. Lauderdale, FL, for ESLU, Inc. fka Excess & Stop–Loss Underwriters, Inc., defendants.

## ORDER

CONWAY, District Judge.

### I. INTRODUCTION

This cause is before the Court for consideration of Defendant ESLU, Inc.'s ("ESLU"), Motion for Judgment on the Pleadings or in the Alternative Motion to Dismiss with Prejudice (Doc. No. 11). Because ESLU has yet to serve its answer, it is premature to request for a judgement on the pleadings. Accordingly, the Court will consider that portion of the motion

that seeks dismissal. For all of the reasons set forth below, the Court determines that the motion is due to be granted.

## II. FACTS

### A. *Trustmark I*

■ On September 22, 1999, Plaintiff Trustmark Insurance Co. ("Trustmark") instituted Case No. 99–1207–CIV–ORL22C [1] in this Court, alleging breach of contract, negligence, and breach of fiduciary duty on the part of ESLU, all stemming from ESLU's allegedly improper underwriting practices under the terms of the "Managing General Underwriting Agreement" ("Underwriting Agreement") entered into by the parties on March 18, 1994. *See* Doc. No. 1 in Case No. 99–1207–CIV–ORL22C. Under the terms of the Underwriting Agreement, ESLU undertook the responsibility of representing Trustmark, functioning as an underwriter and manager of Trustmark's insurance policies with various employers. *See id.* at Ex. A. At some point in this contractual relationship, the parties reached an impasse over Trustmark's concerns regarding ESLU's underwriting practices, which led to the termination of the parties' relationship by mutual consent, effective August 1, 1998, and to the eventual filing of Trustmark's first lawsuit against ESLU. (Doc. No. 11 at 2).

Initially, Trustmark asserted claims for breach of contract, negligence, and breach of fiduciary duty, stemming from ESLU's allegedly improper underwriting of a single policy, the "Manatts Policy." *See* Doc. No. 1 in Case No. 99–1207–CIV–ORL22C

at 4.[2] On January 25, 2000, the Court entered a Case Management and Scheduling Order, which set forth various deadlines. *See* Doc. No. 13 in Case No. 99–1207–CIV–ORL22C. The deadline for motions to amend was set at May 29, 2000. *See id.* The expert witness disclosure deadline for Trustmark was set for August 31, 2000, and September 29, 2000, for ESLU. *See id.* The cut-off date for discovery was scheduled for December 1, 2000, and the deadline for dispositive motions for December 29, 2000. *See id.* Finally, the date for trial was set for the term commencing on May 1, 2001. *See id.* The Order advised the parties that motions for extensions of time and of the discovery deadlines would be disfavored and would not be granted without a showing of good cause, and in any event, such an extension would not affect other deadlines. *See id.* at 4–5.

Trustmark filed a motion for leave to amend its complaint on May 30, 2000, asserting that it learned of additional instances of ESLU's breach of contract, negligence, and breach of fiduciary duty, after conducting an audit of ESLU's records in March, 2000. *See* Doc. No. 29 in Case No. 99–1207–CIV–ORL22C. This Court granted Trustmark leave to amend on July 24, 2000, but notified Trustmark that no further amendments would be allowed. *See* Doc. No. 36 in Case No. 99–1207–CIV–ORL22C. Subsequently, Trustmark filed its Amended Complaint, asserting additional instances of ESLU's allegedly improper underwriting practices with regard to two other insurance policies, the "Cen-

---

1. As a preliminary matter, it is proper to note that the Court may look beyond the pleadings to consider matters of public record in ruling on a motion to dismiss, without converting the motion into one for summary judgment. *See Sizemore v. U.S.,* 651 F.Supp. 463, 466 (M.D.Fla.1985); 5 Charles Wright & Arthur

Miller, *Federal Practice & Procedure* § 1363, at 659–60 (2d ed., West 1990).

2. ESLU was also later granted leave to amend its answer and assert a counterclaim against Trustmark for breach of contract, which ESLU filed on June 8, 2000. *See* Doc. No. 31 in Case No. 99–1207–CIV–ORL22C.

tral States Trucking Policy" and the "Fort Bend Policy." *See* Doc. No. 37 in Case No. 99–1207–CIV–ORL22C.[3]

On August 31, 2000, Trustmark filed a motion for extension of discovery, stating that it needed four months time to further investigate the additional breaches of the Underwriting Agreement it discovered from its audit of ESLU's records; these additional breaches totaled more than 30 or 40 additional instances of improperly underwritten policies. *See* Doc. No. 40 in Case No. 99–1207–CIV–ORL22C. Trustmark further stated that it had been unable to comply with its expert witness deadline as a result, and requested that it be extended to December 29, 2000, for Trustmark and to January 29, 2001, for ESLU. *See id.* Trustmark also asked that the deadline for dispositive motions be moved to January 29, 2001, and that the discovery cut-off be moved to March 31, 2001. Trustmark also indicated that it might not be prepared for trial by the term commencing May 1, 2001. *See id.* at 5. The motion was referred to United States Magistrate Judge James G. Glazebrook, who denied it without prejudice, indicating that Trustmark could file a joint motion to extend other dates, but that the dispositive motion deadline and trial date would not be moved. *See* Doc. No. 41 in Case No. 99–1207–CIV–ORL22C.

On September 6, 2000, Trustmark filed an amended motion for extension of discovery.[4] *See* Doc. No. 42 in Case No. 99–1207–CIV–ORL22C. Judge Glazebrook again denied Trustmark's motion, stating that "[n]o good cause has been shown" for

Trustmark's failure to timely retain an expert or complete discovery within the time frames established by the Case Management and Scheduling Order, and further noting that the "[d]ate [was] set long ago." Doc. No. 43 in Case No. 99–1207–CIV–ORL22C. Trustmark filed objections to Judge Glazebrook's ruling. *See* Doc. No. 46 in Case No. 99–1207–CIV–ORL22C.

On February 27, 2001, just over two months before the scheduled trial date set for trial, Trustmark filed a motion for leave to file a second amended complaint and for continuance of the trial date. *See* Doc. No. 73 in Case No. 99–1207–CIV–ORL22C. Trustmark stated that around the time of March 20, 2000, when it filed its first motion to amend its complaint, "it had not completed its audit of ESLU's massive files," but that the audit was now completed, revealing 42 additional insurance policies which it asserted that ESLU had underwritten improperly. *See id.* at 2. Trustmark also noted that these additional "... claims which Trustmark seeks to specify in its Second Amended Complaint are related to the same basic set of circumstances presented in both the initial and Amended Complaint," and urged the Court to allow these amendments, as well as a continuance of nine months for the discovery cut-off and a year for the trial date. *See id.* at 2, 17. Additionally, on March 5, 2001, Trustmark filed a motion for leave to call an expert witness, in which it emphasized the greatly increased scope of its case posed by its potential 42 additional claims. *See* Doc. No. 74 in Case No. 99–1207–CIV–ORL22C.

---

**3.** In its Answer to Trustmark's amended complaint, ESLU also asserted an additional counterclaim for breach of contract against Trustmark. *See* Doc. No. 38 in Case No. 99–1207–CIV–ORL22C at 16.

**4.** Trustmark proposed that the expert witness deadlines be moved to December 29, 2000 and January 29, 2001 for Trustmark and

ESLU, respectively, and that the discovery cut-off be moved to March 31, 2001. *See* Doc. No. 42 in Case No. 99–1207–CIV–ORL22C at 7. In the alternative, it asked that the expert witness disclosure deadlines be moved to October 31, 2000, and November 30, 2000, respectively, and that discovery be extended to January 31, 2001. *See id.*

On April 13, 2001, this Court denied Trustmark's motions for leave to file a second amended complaint and for continuances of the discovery deadline and trial date. *See* Doc. No. 96 in Case No. 99–1207–CIV–ORL22C. The Court concluded that Trustmark had displayed excessive dilatoriness and a lack of diligence in complying with the Scheduling Order, evidenced by its waiting nearly three months after the close of discovery to file a motion to amend its complaint for a second time. The Court further observed that "good cause" for such delay had not been shown, noting that "... Trustmark had the ability to audit ESLU at any time, because the Managing General Underwriting Agreement ('MGUA') explicitly stated that all of the 'documents, books, records and other materials' of ESLU relating to the business written under the MGUA were 'the property' of Trustmark," and that Trustmark had audited ESLU several times in the past.[5] *See id.* at 4. The Court also commented that Trustmark was not being penalized for failing to assert all of its claims in its initial complaint,[6] but that Trustmark should have been more diligent in raising additional claims "before the last

date on which a motion to amend could be filed."[7] *See id.*

Accordingly, the Court denied Trustmark's second motion to amend its complaint, as well as its Objection to Judge Glazebrook's Order denying its Amended Motion for Extension of Discovery. *See id.* at 5–6. The Court further denied Trustmark's motion for leave to call an expert witness, noting that at the time of the deadline set forth in the Scheduling Order, Trustmark could have identified an expert witness to provide testimony with regard to the three claims which comprised its case at that time, regardless of the fact that the potential amendment of its complaint to reflect an additional 40–some policies might increase the scope of its case.[8] *See id.* at 7. The Court concluded that ESLU should not be prejudiced as a result of Trustmark's "procrastination," and denied its motion to call an expert witness. Subsequently, Trustmark petitioned the Court for reconsideration of these rulings. *See* Doc. No. 113 in Case No. 99–1207–CIV–ORL22C. The Court denied the Motion for Reconsideration, reiterating Trustmark's ongoing duty to comply with the deadlines set out in the

5. This led the Court to determine that Trustmark had not suddenly learned of previously undiscoverable claims, but rather, that it had initiated its lawsuit before it had first conducted a sufficiently thorough investigation. *See* Doc. No. 96 in Case No. 99–1207–CIV–ORL22C at 4–5.

6. The Court pointed out the substantial prejudice that ESLU would suffer if Trustmark was permitted to amend its complaint at such a late date. *See id.* at 5.

7. In fact, the Court pointed out that Trustmark had filed its second motion to amend its complaint "more than 17 months after the original action was filed, almost 9 months after the May 29, 2000 deadline for filing motions to amend had passed, and more than two months past the closing date of discovery." *See id.*

8. The Court observed that no leave had yet been granted for Trustmark to amend its complaint to include those additional claims; and that further, Trustmark should have filed for leave to so amend its complaint, which it had failed to do until nearly two months before the date set for trial. *See id.* at 8. The Court admonished Trustmark for not adhering to the dates set forth in the Scheduling Order, noting that even if Trustmark had been unable to identify an expert in a timely fashion, it had chosen to file a motion for extension of discovery instead of asking the Court for extension of the expert witness disclosure deadline; Trustmark had also tarried in filing that motion until the day before disclosure of its experts was due. *See id.* at 8, n. 1.

Scheduling Order, and lack of diligence in meeting that obligation. *See* Doc. No. 121 in Case No. 99–1207–CIV–ORL22C at 4–6.

On May 1, 2001 the Court granted summary judgment in favor of ESLU as to Counts II and III of the Amended Complaint, concluding that Trustmark's claims for negligence and breach of fiduciary duty were barred by the economic loss rule, because those claims were not independent of Trustmark's breach of contract claim. *See* Doc. No. 128 in Case No. 99–1207–CIV–ORL22C. The case proceeded to a bifurcated jury trial on June 4, 2001. *See* Doc. No. 130 in Case No. 99–1207–CIV–ORL22C. After a five day trial, the jury returned a verdict in favor of ESLU on all of Trustmark's breach of contract claims detailed in Count I of the complaint.[9] *See* Doc. No. 143 in Case No. 99–1207–CIV–ORL22C. On July 6, 2001, Trustmark filed a Notice of Appeal. *See* Doc. No. 153 in Case No. 99–1207–CIV–ORL22C.

### B. Trustmark II

On April 18, 2001, Trustmark initiated the present action against ESLU, again asserting claims for breach of contract, negligence, and breach of fiduciary duty, as well as negligent misrepresentation and fraud. These claims all stem from ESLU's allegedly improper underwriting of Trustmark's insurance policies under the terms of the Underwriting Agreement, with regard to 43 additional policies which Trustmak was unable to add in *Trustmark I.* (Doc. No. 1). On June 15, 2001, ESLU filed a Motion for Judgment on the Pleadings, or in the Alternative, Motion to Dismiss with Prejudice (Doc. No. 11), asserting that Trustmark's instant suit is barred by the doctrine of *res judicata.*

### III. DISCUSSION

ESLU contends that insomuch as Trustmark's cause of action is barred under principles of *res judicata,* or claim preclusion, Trustmark has failed to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). It is well settled that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). A party seeking to successfully raise *res judicata* must establish the doctrine's four necessary components: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *In re Piper Aircraft Corp.,* 244 F.3d 1289, 1296 (11th Cir.2001) (citing *Israel Discount Bank, Ltd. v. Entin,* 951 F.2d 311, 314 (11th Cir.1992); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1550 (11th Cir.1990)). Once these four elements have been established, the court further considers whether the claim in the instant action was or could have been raised in the previous case, and if so, *res judicata* bars the instant action. *See id.* at 1296 (citing *In re Justice Oaks,* 898 F.2d at 1552).

It is apparent that the first three elements of res judicata are satisfied. First, neither party contests this Court's exercise of jurisdiction in the previous case. Second, *Trustmark I* ended in a jury verdict rendered in favor of ESLU, upon which the Court entered its Judgment on June 8, 2001. *See* Doc. No. 149 in

---

**9.** The jury answered "No" to the question, "Did ESLU breach the terms of the Managing General Underwriting Agreement with Trust- mark Insurance Company?" with regard to all three policies pled in Trustmark's Amended Complaint.

Case No. 99–1207–CIV–ORL22C. Trustmark attempts to cast the preclusive effect of this judgment into doubt based on its pending appeal to the Eleventh Circuit. Contrary to Trustmark's assertion, the final judgment of a court will not cease to function as *res judicata* merely because a party elects to seek appellate review of that judgment. *See Jaffree v. Wallace,* 837 F.2d 1461, 1467 (11th Cir.1988); 18 Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice & Procedure,* § 4433, at 305 (2d ed. West, 1990). Thirdly, the parties in both the prior and instant action are identical. As to the final element, Trustmark disputes whether the causes of action are the same.

 In the Eleventh Circuit, "[t]he determination of whether a litigant has asserted the same cause of action in two proceedings depends upon whether the primary right and duty are the same in both cases." *See Manning v. City of Auburn,* 953 F.2d 1355, 1358 (11th Cir.1992). The test is of the substance, and not the form, of the actions. *See I.A. Durbin, Inc. v. Jefferson Natl. Bank,* 793 F.2d 1541, 1549 (11th Cir.1986). To assist in this examination, the Eleventh Circuit has adopted the transactional approach to claim preclusion, where if a case is based on the same nucleus of operative fact as a previous action, the two cases constitute the same "claim" or "cause of action" for the purposes of *res judicata. See Citibank v. Data Lease Financial Corp.,* 904 F.2d 1498, 1503 (11th Cir.1990).

 As noted by the Restatement, the standard for determining what constitutes a "transaction" is a pragmatic one, ... to be applied with attention to the facts of the cases.... In general, the expression connotes a natural grouping or common nucleus of operative facts. Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held precluded. But the opposite does not hold true; even where there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series.

*Restatement (Second) of Judgments* § 24(2) cmt. b (1982). As Trustmark has previously acknowledged, its current claims, which Trustmark unsuccessfully sought to adopt in its complaint in *Trustmark I,* are "related to the same basic set of circumstances presented in both the initial and Amended Complaint." *See* Doc. No. 73 in Case No. 99–1207–CIV–ORL22C at 2. In fact, every instance of allegedly improper underwriting on the part of ESLU, inclusive of each insurance policy which Trustmark has identified in its two suits against ESLU before this Court, springs from the basic proposition that ESLU breached the terms of the Underwriting Agreement. Essentially, they are all separate claims for breach of the same contract. Each and every one of these breaches occurred prior to the filing of *Trustmark I,* and they could have been tried together in that case. This proved impossible, as Trustmark elected to file suit prematurely, instead of thoroughly investigating its alleged injuries, by utilizing records to which it had continual access during the course of its relationship with ESLU.

Trustmak asserts that its 43 additional claims do not constitute the same cause of action due to the fact that Trustmark

seeks to present evidence specific to each of these policies, which was not presented in its prior lawsuit against ESLU, in support of these additional claims. Although additional evidence would be proffered by Trustmark in support of these additional breaches, the additional breaches all stem from a single transaction, the Underwriting Agreement. Additionally, all of these breaches occurred prior to the filing of Trustmark's previous lawsuit. Regardless of the existence of differing quantums of evidence which might be available in support of each instance of breach, all of Trustmark's injuries stemming from ESLU's alleged breaches arise out of one contract, and thus comprise but one cause of action under that contract. *Cf. Turner v. Gladys Belle Oil Co.*, 36 F.2d 671, 672 (5th Cir.1930); *Prime Management Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir.1990); *Container Transport Intl., Inc. v. U.S.*, 199 Ct.Cl. 713, 468 F.2d 926, 928 (1972).

■■■ This is analogous to the principle that a party must assert all of its claims arising from the same transaction or occurrence, based on the same nucleus of operative fact, in one lawsuit. As noted by Professors Wright, Miller and Cooper, "[c]ontract cases often can be resolved by a simple rule that the first suit must claim every breach that has then occurred," and "[a]ll breaches occurring prior to commencement of the first action constitute part of a single claim or cause of action ...." 18 Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and Procedure*, § 4408, at 65, § 4409, at 75 (2d ed., West 1990). Prior to filing its first lawsuit, Trustmark knew or could have known of all of the facts upon which its current lawsuit is based. Where a party is "in possession of all the facts on which its second suit is based, the splitting of the claims into multiple suits is fatal to maintenance of the later-filed action." *Alyeska Pipeline Service Co. v. U.S.*, 231 Ct.Cl. 540, 688 F.2d 765, 769 (1982) (quoting *Ev-*

*erett Plywood Corp.*, 206 Ct.Cl. 244, 512 F.2d 1082, 1087 (1975)). Thus, the 46 successive breaches of contract sought to be asserted by Trustmark constitute but one singular claim, and Trustmark has impermissibly attempted to split its cause of action.

■■■ Having established the presence of the four prerequisites to a final judgment having preclusive effect on the filing of a subsequent action, the Court next determines if the instant claims either were or could have been raised in the earlier proceeding. *Res judicata* operates as a bar not only as to the precise legal theory advanced in the prior round of litigation, but also to all legal theories and claims which arise from the same nucleus of operative fact. *See Olmstead v. Amoco Oil, Co.*, 725 F.2d 627, 632 (11th Cir.1984). A final judgment will thus preclude renewed consideration of any issue relevant to the first cause of action, regardless of whether it was brought forth at trial. *See id.* Therefore, *res judicata* bars all claims which could have been brought in the previous round of litigation, which encompasses any "claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action." *Pleming v. Universal–Rundle Corp.* 142 F.3d 1354, 1360 (11th Cir.1998).

Trustmark contends that the claims which it now alleges "did not exist until Trustmark completed its audit of ESLU's voluminous files ...." (Doc. No. 19 at 2). To the contrary, the wrongs of which it now complains, as Trustmark has previously conceded to this Court, all occurred prior to the bringing of its first lawsuit. The fact that Trustmark was idle in investigating those alleged breaches does not mean that those claims were not in existence at the time it filed its first action. Here, the alleged misconduct of ESLU

occurred entirely before Trustmark brought that action, and all of the relevant information was accessible to Trustmark. Trustmark could have presented its current claims in its previous lawsuit if it had pursued those claims in a timely fashion. Because those claims *might* have been so included, they *must* have been so included, or else they are barred today by *res judicata, see Interstate Pipe Maintenance, Inc. v. FMC Corp.*, 775 F.2d 1495, 1497 (11th Cir.1985). "It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action[,] and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late." *Restatement (Second) of Judgments*, § 25 cmts. b, d (1982). This is true even though Trustmark now seeks to substantiate its claims based upon evidence varying from what was brought forth previously. *See id.*

Trustmark correctly notes that "Judge Conway's Order repeatedly and pointedly establishes the scope of the prior litigation as involving only the three named policies," and claims that "Judge Conway indicated that the filing of a separate lawsuit was the appropriate step for Trustmark." (Doc. No. 19 at 2).[10] This represents a selective reading of the Orders of the Court, taking statements made by the Court out of context. The Court did not indicate that the filing of a separate lawsuit was the appropriate step. To the contrary, the Court indicated in its Order of April 13, 2001, that Trustmark had not

shown good cause for its failure to identify an expert witness, regardless of a potential increase in the scope of the litigation, as it could have identified an expert as to the three insurance claims which were detailed at that time in its Amended Complaint, but chose not to. *See* Doc. No. 96 in Case No. 99–1207–ORL22C at 9. The Court further admonished Trustmark for its failure to adhere to the Scheduling Order, drawing particular attention to the fact that Trustmark had waited more than 17 months after the start of the original action, 9 months after the deadline for filing motions to amend, two months after the discovery cut-off, and nearly two months before the date set for trial to file its motion to amend. *See id.* at 5.

Trustmark correctly points out that the Court's Order stated that "Trustmark should not be penalized for its failure to assert all its potential claims in the original complaint ...," however, Trustmark conveniently omits the remainder of that sentence, which reads: "however, once the scheduling order had been issued, *Trustmark should have been more diligent in making sure that any potential new claims could be identified before the last date on which a motion to amend could be filed.*" *Id.* at 4 (emphasis added). Trustmark's statement that "Judge Conway was very clear in permitting Trustmark to pursue these claims in [*Trustmark II* ]," is inapposite with the reality that the Court chastised Trustmark for its languor, while emphasizing the gross prejudice which would befall ESLU had Trustmark been

---

**10.** While it is true that the Court indicated that Trustmark was not being punished for failing to assert all of its claims in one lawsuit, and did not specifically foreclose on the possibility that Trustmark could file a subsequent suit based on its additional claims, the reverse implication that Trustmark *would* be allowed to bring a subsequent suit is ill-founded. At the time the Court issued its Order of April 13, 2001, the case had not yet gone to

trial. As such, the Court could not have denied that it was within the realm of possibility that Trustmark might prevail at trial, and even bring a successive suit on its other claims. Neither could the Court deny the possibility that Trustmark might lose on its claims, and that ESLU might raise *res judicata* as a defense in any subsequent lawsuit. It was entirely possible that either result would occur.

permitted to amend its complaint a second time.

The substance of both the previous and instant cases turns on the same legal theories, and in particular, on the basic question of whether ESLU breached the terms of the Underwriting Agreement. But for Trustmark's lack of diligence, all of Trustmark's evidence in support of its claims might have been presented in one lawsuit, as they all arise from the same common nucleus of operative fact and comprise the same cause of action. Having already lost on the merits of its claims once, Trustmark now seeks a second bite of the apple, resulting in the harassment of the defendant and a burdening of judicial time and resources. It is precisely this sort of vexatious and repetitive litigation which *res judicata* has as one of its chief aims to prevent. *See Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir.1999) (quoting *Montana v. U.S.*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979)); 18 Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and Procedure*, § 4403, at 11–16 (2d ed., West 1990).

 Parties are prohibited from relitigating claims which could have been raised, but which were not, "even due to their own negligence, inadvertence, or even accident, in omitting a part of their case." *Beloit v. Morgan*, 7 Wall. 619, 74 U.S. 619, 623, 19 L.Ed. 205 (1868). This is not a situation where, as the Plaintiff was preparing its case, it uncovered evidence of additional injuries it had sustained which had been concealed by the defendant, or which it could not have previously investigated or discovered. Rather, this is a situation where Trustmark failed to properly utilize the processes afforded by this Court, and was not diligent in investigating the full extent of its injuries, resulting in its failure to zealously pursue redress for its grievances. Trustmark's entire controversy with ESLU has already been tried before this Court, whether all of its grounds for relief were presented to the Court or not. *Cf. Williamson v. Columbia Gas & Electric Corp.*, 186 F.2d 464, 470 (3d Cir.1950). The predicament in which Trustmark finds itself is of its own making. Again, the Court finds wise counsel in the Restatement:

> The rule that a defendant's judgment acts as a bar to a second action on the same claim is based largely on the ground that fairness to the defendant, and sound judicial administration, require that at some point litigation over the particular controversy come to an end. These considerations may impose such a requirement even though the substantive issues have not been tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding ...

*Restatement (Second) Judgments* § 19 cmt. a (1982).

## IV. CONCLUSION

For all of the foregoing reasons, it is ORDERED as follows:

1. Defendant ESLU's Motion for Judgment on the Pleadings (Doc. No. 11), filed June 15, 2001, is DENIED.

2. Defendant ESLU's Motion to Dismiss with Prejudice (Doc. No. 11), filed June 15, 2001, is GRANTED.

3. The Clerk shall close the file in this case.