797 So.2d 18 (2001)
GENERAL DYNAMICS CORP., et al., Appellant,
v.
Jeno F. PAULUCCI and Lois Mai Paulucci, Appellee.
Nos. 5D00-699, 5D00-1466, 5D00-1878.
District Court of Appeal of Florida, Fifth District.
August 10, 2001.
Rehearing Denied September 28, 2001.
*19 Rory C. Ryan, Stacy D. Blank, and Steven L. Brannock, of Holland & Knight LLP, Orlando, for Appellants.
David H. Simmons, Dale T. Gobel and Daniel J. O'Malley, of Drage, deBeaubien, Knight, Simmons, Mantzaris & Neal, Orlando, for Appellees.
HARRIS, J.
After a prolonged dispute which led to litigation involving the Pauluccis' claim that General Dynamics Corp. or other named corporations or limited partnerships associated with it (all hereinafter referred to simply as GDC) had seriously polluted their property, the parties reached a settlement agreement. Under the terms of the agreement, GDC was required to pay appellees a considerable sum of money. This payment was made. The agreement further required that GDC, with the cooperation of appellees, would be responsible for the "environmental clean up" of the property to meet certain standards (apparently the standards were those minimum requirements of the various appropriate governmental agencies) and to assure that the property was in compliance with Department of Environmental Protection (DEP) standards so that the Department's No Further Action (NFA) letter issued previously could be maintained. GDC agreed that if there was no valid NFA letter in existence fifteen months from the date of the settlement agreement, it would pay a specified rental for the property until such a valid letter was obtained. In this regard, the agreement provided that "[f]or the purpose of this settlement agreement, it shall be conclusively presumed that Defendants are acting reasonably, in good faith, and with due diligence if they are in compliance with the procedures, requirements, and time schedules of the DEP and any other applicable governmental agency."
The agreement also provided that "[d]efendants shall at Defendant's sole cost and expense promptly initiate contact with the DEP concerning the Environmental Condition of the property to maintain the NFA or to obtain reissuance of the NFA, and, if required by the DEP for such purposes, will investigate and implement clean up, remediation, and monitoring activities." Concerning monitoring, the Pauluccis were given the right to independently monitor GDC's clean up of the property. Since the contract did not provide otherwise, such monitoring by the Pauluccis was to be at their own expense.
Finally, at least as is significant for this appeal, appellants agreed to give appellees adequate and reasonable notice of any and all meetings, conferences, or other contacts with any governmental agencies.
By agreement between the parties, the court was requested to approve the settlement agreement and incorporate it into the final judgment. The court approved the agreement, made it a part of the final *20 judgment, and retained "jurisdiction of this matter in order to enforce, construe, interpret, and otherwise insure compliance by the parties with the Settlement Agreement."
Once the judgment incorporating the settlement agreement was entered, the initial pollution action came to an end. It was resolved by the agreement and judgment. Obviously, at some point (actually several points) after the entry of the judgment, there were allegations that GDC breached the agreement in various ways. The first issue before us is whether a remedy for the alleged breaches remains within the jurisdiction of the court which approved the settlement or must be brought as an independent action. Other issues, if we get that far, are whether the Pauluccis proved the condition precedent justifying the award of the stipulated rental payments and whether the award of attorneys' fees and costs were appropriate.
Concerning the first issue, Judge Eaton in his order of November 4, 1999, considered the competing policies of Buckley Towers Condominium, Inc. v. Buchwald, 321 So.2d 628 (Fla. 3rd DCA 1975), and our opinion, Wallace v. Townsell, 471 So.2d 662 (Fla. 5th DCA 1985), and arrived at what appears to be a reasonable solution. Before going further, perhaps we should consider the difference in "enforcing" a contract on the one hand and an action for damages based on breach of contract on the other. By enforcing a contract, it is assumed that the contract has continuing validity and a party is ordered to comply with its terms. A breach of contract action presupposes that the contractual relationship is at an end because of a material breach by one party and damages are sought by the non-breaching party as a substitute for performance. The issue as it relates to this settlement agreement is complicated by the fact that in one provision of the agreement, GDC stipulated to pay rental as a consequence of there not being a valid NFA letter fifteen months after the date of the settlement agreement while another provision provided for damages, including costs and attorneys' fees, in the event of a breach by either party. Judge Eaton held that the court approving the agreement had the authority to enforce GDC's obligation to pay the stipulated rental if it determined that a valid NFA letter was not in place fifteen months after the date of the agreement but that any action for damages under the general "breach" provision (as opposed to enforcement of a duty accepted in the contract) would have to be instituted as a separate action. Even if this solution is reasonable, we must still determine whether it is consistent with Wallace.
Buckley Towers held that a trial court, even without an express reservation of jurisdiction, retains the authority (jurisdiction) to enforce its orders. A settlement agreement incorporated within a final judgment, under Buckley Towers, may be enforced by the court which entered the judgment. But in Wallace, this court took an approach based on a strict view of the pleadings. We held that a court has only that subject matter jurisdiction which is invoked by the initial pleadings.[1] In this *21 case, the court would only have subject matter jurisdiction over the pollution action which was resolved by the settlement agreement. An action based on that settlement agreement, under Wallace, would have to be brought in a separate action, by complaint and not motion, giving the defendant the opportunity to plead his defenses and request a jury trial if appropriate.
We recognize we are bound by Wallace but we find that Judge Eaton's holding below warrants analysis. A complaint is, of course, essential to initiate an action. But its purpose is to invoke the subject matter jurisdiction of the court and to give notice of the claim. Has not that purpose been met when the parties stipulate in their settlement agreement resolving an action for which the court already has jurisdiction that based on a certain event occurring, or based on failure of a certain event to timely occur, stipulated consequences will flow and also agree that the court approving the settlement is authorized to determine whether such event did or did not occur and whether such consequences should or should not be suffered? Can it not be said that the settlement agreement approved by the court and adopted as part of the final judgment together with the agreement of the parties that the court can enforce that agreement, in effect, "amended" the initial pleadings and waived any claim for a jury trial?
Because we feel bound by Wallace,[2] we reverse the judgment below but certify the following issue to the supreme court as being one of exceptional importance and as being in conflict with Buckley Towers:
DOES A COURT WHICH APPROVES A SETTLEMENT AGREEMENT RETAIN JURISDICTION TO ENFORCE THE TERMS THEREOF EVEN IF THE REMEDY SOUGHT IS OUTSIDE THE SCOPE OF THE ORIGINAL PLEADINGS?
Because this matter may be returned to us, we believe it appropriate to answer the other issues identified at the start of this opinion at this time. Otherwise the parties will be effectively denied the benefit of oral argument. We hold that the Pauluccis did not establish a right under the agreement to receive the rental payments.[3] The contract did not provide that pollution greater than the applicable standards will require GDC to make rental payments. The settlement agreement required that there be a valid NFA letter in place fifteen months after the date of the agreement in order to avoid having to make rental payments. There is no question that a valid NFA letter had been issued prior to the fifteen month deadline. In fact, it was in place at the time of the agreement. The Pauluccis claim that after the issuance of the NFA letter new testing revealed areas of pollution which exceed DEP standards (GDC does not dispute that greater pollution was in fact discovered after issuance of the NFA letter) and that therefore the NFA letter automatically became invalid. We believe that the parties by their agreement intended that *22 DEP would determine the validity of its NFA letter. No evidence was presented to the trial judge that DEP, even after having been advised of the controversy relating to the discovery of greater pollution, had withdrawn or rescinded the letter even though DEP's agent testified by affidavit that such letter could be withdrawn based on proof of increased levels of pollution. GDC's specific contractual obligation was to either maintain the existing NFA letter or, if necessary, to obtain a reissuance of a NFA letter.[4] The Pauluccis' only evidence at the hearing was that there existed a greater level of pollution than permitted by the applicable environmental standards and that the Pauluccis' experts opined that the NFA letter was no longer valid. The parties did not contract to be bound by an expert's opinion. The Pauluccis can win only if the NFA letter self destructs upon discovery of a greater pollution.[5] Does the NFA letter cease to be valid the moment higher pollution is discovered or does it remain valid until the DEP takes affirmative action to withdraw or rescind it? The affidavit of the DEP agent indicates that affirmative action by the Department would be required to invalidate the letter.[6] No one testified at the hearing that the Department had withdrawn or rescinded the letter.
Although this holding vitiates the award of attorneys' fees and costs included in the judgment, some discussion of the fees and costs seem appropriate. For a minimum amount of time actually spent in enforcing the settlement agreement, the court awarded $192,456.16 in attorneys' fees and $52,885.28 in costs based on GDC's "breach." In doing so, the court applied a contingency multiplier (yes, there was a "modified" contingency contract in this case) of two. Even without the multiplier which we find inappropriate in this contract action and unjustified under Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), (there was absolutely no showing that the Pauluccis could not get competent counsel in the Orlando area to take this enforcement of contract case without the multiplier), we find the amount of attorneys' fees excessive and unauthorized by the agreement. Many of the hours considered and all the costs involved related to the Pauluccis' monitoring of GDC's clean up efforts. The agreement does not provide that GDC will pay for this monitoring activity by the Pauluccis whether or not there is a breach of the settlement agreement. Thus, to the extent the fees and costs are affected by the multiplier and the hours and costs expended on monitoring the clean up, the *23 award of attorneys' fees and costs cannot stand.
In summary, we reverse because of the holding of Wallace. If it is determined that the lower court had jurisdiction to enforce the agreement incorporated in the final judgment, then we reverse because the verdict is not supported by the evidence. In any event, we reverse the award of attorneys' fees and costs.
REVERSED; QUESTION CERTIFIED.
PETERSON and ORFINGER, R.B., JJ., concur.
NOTES
[1] The court held:

The pleadings in this case invoked the trial court's equity subject matter jurisdiction to cancel a deed. While the circuit court also has subject matter jurisdiction to adjudicate damages for breach of contract ... such subject matter jurisdiction to enforce the settlement agreement was not properly invoked by pleadings in this case. If the settlement agreement was breached that matter should have been the subject of a separate action in which one of the parties pleaded a cause of action based on the settlement agreement and the other pleaded any legal defense to the asserted cause of action.
Wallace, 471 So.2d at 665.
[2] See to the same effect George Vining & Sons, Inc. v. Jones, 498 So.2d 695 (Fla. 5th DCA 1986).
[3] The Pauluccis contend they did prove two breaches of the agreement. One, GDC did not promptly notify the DEP as required by the agreement and two, GDC did not advise the Pauluccis of the contact made by GDC with DEP when it did report. Neither of these "breaches," even if proved, would justify ordering GDC to pay the rental payments. If any damages can be proved resulting from these breaches, that cause must be pled under the general breach provision in an independent action.
[4] The specific contractual language is: "Defendants shall ... maintain the NFA or to obtain reissuance of the NFA, and if required by the DEP for such purposes, will investigate and implement clean up, remediation, and monitoring activities."
[5] Although the letter is "[b]ased on the information provided," there is no indication that the letter becomes automatically invalid upon a finding of greater pollution. It does not appear that the letter is conditional in the sense that it self destructs upon the discovery of new pollution.
[6] The affidavit states:

Most No Further Action letters contain a "re-opener" or qualifying language such as "based on the information provided ..." New information, therefore, would provide a basis for the Department to reconsider the No Further Action determination. Thus, if a No Further Action letter existed with respect to a particular site, and data developed after issuance of the letter indicated the presence of contaminants which exceed MCL's, such a letter would be rescinded or withdrawn. The Department would require, at a minimum, monitoring of the site until the requirements for obtaining a No Further Action letter were met ...