TORPY, J.
This is a contract dispute related to contaminated, industrial warehouse property. The. crux of the dispute involves whether Appellants, who formerly leased the warehouse property from Appellees, are responsible for paying damages for delays in the completion of site remediation. The resolution of this dispute turns on whether Appellants complied with the terms of a settlement agreement that required them to perform within fifteen months or pay a stipulated monthly rental amount. The lower court determined, by summary judgment, that Appellants were obligated to pay such damages. We affirm.
We have considered this dispute previously in General Dynamics Corp. v. Paulucci, 797 So.2d 18 (Fla. 5th DCA 2001) (“Paulucci I”), from which some of the relevant factual and procedural history may be derived. In a nutshell, Appellees sued Appellants for damages caused by contamination to Appellees’ property. Pri- or to, and during the course of, that litigation, environmental cleanup and testing under the supervision of the Department of Environmental Protection (“DEP”) was ongoing. Based on testing of two monitoring wells done in February of 1997, the DEP issued a “No Further Action” letter (“NFA letter”), which provided in relevant part as follows:
Based on the information provided in your letter dated March 6, 1997, no further action is required at the former Stromberg-Carlson Site, 2380 West 25th Street, Sanford, Florida. Analytical results for the ground water samples collected on February 18, 1997, do not indicate the presence of contaminants which exceed state standards for ground water or minimum criteria for G-II ground water quality.
(Emphasis added).
Thereafter, in May of 1998, further testing revealed the existence of environmental pollutants in a different location on the property. The details of this additional contamination were expressed in a report from Hartman and Associates. Before commencement of site remediation necessitated by the Hartman report, the parties executed a settlement agreement that is at the center of this dispute. In the agreement, dated July 24, 1998, Appellants agreed to, among other things, “promptly initiate contact with the DEP concerning the Environmental Condition of the property to maintain the NFA or to obtain reissuance of the NFA.” The contract specifically defined “Environmental Condition” as including the pollution described in the 1998 report and “any additional investigations” conducted or “requested by any governmental agencies on the property.” The settlement agreement further provided that Appellants would be responsible for certain damages if, after fifteen months from the date of the settlement agreement, there was no “valid” NFA letter in place regarding “the subject property.”
The settlement agreement notwithstanding, Appellants failed to promptly notify the DEP about the 1998 report. After Appellees obtained a court order requiring Appellants to contact the DEP, further remediation was ordered by the DEP. Thereafter, discovery of additional contamination as outlined in reports dated October of 1998, November of 1999 and July of 2001, necessitated additional remediation *509 on the property. Finally, in March of 2002, the DEP issued a new NFA letter for the property. .
There is no dispute that Appellants were responsible for remediation at the site. Rather, the dispute involves whether the damages clause of the parties’ settlement agreement was triggered. Because the new NFA letter was not issued until March of 2002, more than fifteen months from the date on which the settlement agreement was made, the issue' posited here is whether the February, 1997, NFA letter remained “valid” at the fifteen-month mark and beyond. This dispute is somewhat complicated by the procedural route through which this case has traveled.
Claiming a default under the settlement agreement, Appellees first proceeded by motion to enforce the agreement, rather than by independent action. During the hearing on Appellees’ motion, although no evidence was adduced that the- DEP had withdrawn the NFA letter issued in 1997, Appellees presented expert testimony that the NFA letter was no longer' valid because it was expressly premised on information that was no longer accurate and because “further action” was ordered. The lower court determined that Appellants were in breach and entered judgment for the outstanding stipulated rental amount then due. The judgment was appealed and, in Paulucci I, we reversed on two grounds. First, we held that the lower court did not have jurisdiction to enter the damage judgment because an independent action was necessary. Second, we held that, even if the lower court did have jurisdiction, Appellees had failed to prove an essential condition precedent to recovery under the contract — that the NFA letter issued in 1997 was invalid. Although expert testimony was adduced on that issue, we determined that invalidity could not be proven without testimony from the DEP because the contract contemplated that “DEP would determine the validity of its NFA letter.” Id. at 21-22.
From our decision in Paulucci I, Appel-lees pursued a two-pronged procedural strategy. They appealed our ruling to the Florida Supreme Court and filed an independent action. The appeal to the supreme court resulted in the partial reversal of our decision in Paulucci I. The supreme court held that the lower court did have jurisdiction to enforce the settlement agreement by motion. The court declined to address the second part of our holding, however. Paulucci v. General Dynamics Corp., 842 So.2d 797 (Fla.2003). Based on the mandate of the high court, we issued General Dynamics Corp. v. Paulucci, 848 So.2d 495 (Fla. 5th DCA 2003). Prior to the issuance of our mandate, however, the lower court entered the summary judgment in this independent action, from which the instant appeal was taken.
The summary judgment was predicated in part upon the deposition testimony of DEP employees (not introduced in Paulucci I) who explained that the 1997 NFA letter pertained only to the portion of the property in the vicinity of the two wells that had been tested. Furthermore, the DEP emphasized that the letter was predicated on the assumption that the information provided by consultants was accurate. Once the DEP received evidence that further contamination was present elsewhere on the property, the DEP no longer deemed that the NFA letter was valid as it pertained to the remainder of the property, as was evidenced by the fact that “further action” was required until 2002, when a new NFA letter was issued for the entire property.
As their first point on appeal, Appellants argue that the instant action is barred by the doctrines of res judicata and *510 collateral estoppel because these issues were determined in Paulucci I. However, as Appellees point out, Appellants waived these affirmative defenses by not pleading them in their answers. Appellants acknowledge that they failed to plead these defenses but argue that, because the appeal . of Paulucci I remained pending throughout the course of these proceedings, the assertion of these defenses below would have been premature. Because the mandate in Paulucci I has now issued, however, Appellants contend that these defenses have ripened and may be argued for the first time on appeal. We reject this contention. See Capital Assur. Co., Inc. v. Margolis, 726 So.2d 376 (Fla. 3d DCA 1999) (pendency of appeal does not diminish preclusive effect of judgment); see also, Trustmark Ins. Co. v. ESLU, Inc., 153 F.Supp.2d 1322, 1329 (M.D.Fla.2001) (res judicata available as defense notwithstanding pending appeal of first judgment) (citing Jaffree v. Wallace, 837 F.2d 1461, 1467 (11th Cir.1988); 18 Charles Wright, Arthur Miller & Edward Cooper, Federal Practice & Procedure, § W3 at 305 (2d ed. West, 1990)).
Even were we to consider the merits of Appellants’ claimed defenses, our conclusion would be the same. Paulucci I simply held that Appellees had not met their burden of proving the invalidity of the NFA letter because Appellees offered no evidence from the DEP to establish that they deemed that the NFA letter was “invalid.” Because this was a necessary condition precedent to Appellees’ right of recovery under the settlement agreement, we reversed the trial court’s judgment awarding damages to Appellees. Our decision did not hold that, in fact, the NFA letter was valid at all material times. Therefore, Appellees were not precluded from later establishing the invalidity of the letter through proper proof, including, for example, testimony from DEP employees, which is exactly what was adduced below in this proceeding. See State Street Bank & Trust Co. v. Badra, 765 So.2d 251 (Fla. 4th DCA 2000) (failure to adduce proof of condition precedent does not preclude subsequent action on same contract); see also, Klein v. John Hancock Mut. Life Ins. Co., 683 F.2d 358 (11th Cir.1982) (where contract contains continuing obligations, failure to establish breach at first instance not bar to subsequent action to establish continuing breach).
Alternatively, Appellants contend that Appellees still failed to establish that a breach occurred, even with the deposition testimony of the DEP employees, because the DEP never expressly withdrew or rescinded the .1997 NFA letter. Although the agreement does not state that the DEP must withdraw or rescind the NFA before the damage clause is triggered, Appellants argue that Paulucci I interpreted the contract in this manner. We disagree. In discussing the failure of proof, although Paulucci I noted that the DEP never withdrew or rescinded the letter, nothing in the opinion concludes that an express rescission by DEP is the only manner by which Appellees could establish that the DEP considered the NFA to be invalid. Rather, Paulucci I simply held that there must be evidence that the DEP considered the letter to be invalid. To the extent that Paulucci I can be interpreted otherwise, we conclude that the interpretation. is not supported by the language of the contract and recede from that portion of the panel’s decision.
The obligation to pay damages under the language of the- contract turns on whether the 1997 NFA letter was “valid” for “the property in question” at the fifteen-month mark, not whether the DEP expressly declared its invalidity by formally withdrawing or rescinding it. The DEP *511 expressly premised the NFA letter on the assumption that pollutants had been lowered to within acceptable tolerances. When new reports revealed that further contamination was discovered on the site and the DEP determined that remediation of that contamination was necessary, “further action” was clearly required by the DEP, thereby invalidating the 1997 NFA letter.
AFFIRMED.
PLEUS, C.J., SHARP, W., PETERSON, GRIFFIN, THOMPSON, SAWAYA, PALMER, ORFINGER and MONACO, JJ., concur.