SOUTHEAST FLORIDA CABLE, INC., a Florida Corporation, d.b.a. Adelphia Cable Communications, Plaintiff-Appellant,

v.

MARTIN COUNTY, FLORIDA, a political subdivision of the State of Florida, Marshal L. Wilcox, et al., Defendants-Appellees.

No. 98-4516.

United States Court of Appeals,

Eleventh Circuit.

April 27, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 97-14051-CV-JCP), James C. Paine, Judge.

Before HATCHETT, Chief Judge, BARKETT, Circuit Judge, and RONEY, Senior Circuit Judge.

BARKETT, Circuit Judge:

Southeast Florida Cable, Inc., d/b/a Adelphia Cable Communications ("Adelphia"), appeals the dismissal of its complaint against Comcast Cablevision of West Palm Beach, Inc. ("Comcast"), Martin County, Florida and the Martin County Board of County Commissioners ("Martin County"). In its complaint, Adelphia alleged that Martin County gave favorable treatment to Adelphia's competitor, Comcast, in violation of the Due Process and Equal Protection Clauses, and failed to act on its license renewal request in violation of the Federal Cable Act, 47 U.S.C. § 521 *et seq.* The district court dismissed Adelphia's constitutional claims based on *res judicata* and found that the Cable Act claim was not ripe for judicial review. We reverse on both counts.

*I.     Background*

Martin County, a franchising authority, has granted both Adelphia and Comcast franchises to operate cable systems. *See* 47 U.S.C. § 522 (defining "franchise authority," "cable system," and "cable operator"); Martin County Ordinance No. 352 (1988) ("County Cable Ordinance"). Adelphia's franchise originated with its predecessor in interest in 1974. Comcast's franchise began in May 1994 when Martin County gave

Comcast the right to service the single housing association known as Summerfield, a limited area within the County.

Shortly after Comcast obtained the Summerfield service area, Adelphia filed suit ("the prior lawsuit") in federal district court against Martin County alleging that the awarding of a franchise for a limited service area violated the Equal Protection Clause and Florida statutory law. Adelphia's claim was based on what it calls the "universal service" requirement in the County Cable Ordinance, which provides that a cable operator must be able to serve ninety percent of its service area or provide a plan for doing so within a two-year period. Specifically, the ordinance provides that in order to obtain a franchise license, a cable operator must "meet the approved timetable by providing service to the specified area with a capability of serving a minimum of ninety (90%) percent of the potential unserved subscribers meeting the density standards in the area." County Cable Ordinance § 5.3(B).

In that prior lawsuit, Adelphia argued that by permitting Comcast to serve only an affluent area, Comcast avoided the obligation placed upon Adelphia of having to lay cable throughout the entire county in order to comply with the ninety percent rule and thereby avoided serving the low-income areas which are often more costly to operate. This, Adelphia claimed, violated its rights under both the Equal Protection Clause and Fla. Stat. § 166 (1987) ("Florida Level Playing Field Statute"), under which a franchising authority cannot grant terms more favorable to one franchise than another.[1]

The district court found that both Adelphia and Comcast had an obligation to maintain the capability of providing service to ninety percent of the service area's residents, albeit in different-sized areas. It

---

[1]The Florida Level Playing Field Statute, which governs the terms and conditions of overlapping cable franchises, states:

> No municipality or county shall grant any overlapping franchises for cable service within its jurisdiction on terms or conditions more favorable or less burdensome than those in any existing franchise within such municipality or county.

Fla. Stat. § 166.046(3).

2

therefore ruled that Martin County had not discriminated between franchise licenses and had not deprived Adelphia of any constitutional protection. Adelphia did not appeal.

Two years later, Martin County granted Comcast a service area geographically equivalent to Adelphia's—that is, county-wide—without requiring that Comcast provide service to ninety percent of the area's residents. Also at that time, Adelphia sought to renew its existing franchise and Martin County declined to act on Adelphia's license renewal request saying that Adelphia had failed to file a proper formal application.

Adelphia then filed this action asserting that Martin County's grant to Comcast of a service area equivalent to Adelphia's, without requiring Comcast to comply with the ninety percent proportionate service obligation that Adelphia had been required to meet, violated both the Florida Level Playing Field Statute and an analogous section of the County Cable Ordinance,[2] as well as the Due Process and Equal Protection Clauses. Adelphia sought declaratory and injunctive relief voiding the extension of a county-wide license to Comcast. In a separate count, against both Martin County and Comcast, Adelphia claimed an additional cause of action, based on 47 U.S.C. § 541 of the Cable Act[3] through which Congress intended to eliminate

---

[2]Section 4.5(I) mimics the Florida Level Playing Field statute, stating that,

> [p]ursuant to Section 166.046(3) & (4), Florida Statutes, no overlapping franchises shall be granted on terms or conditions more favorable or less burdensome than those in any existing franchise, provided that the area in which the overlapping franchise is being sought is actually being served by an existing cable service provider holding a franchise for such area.

County Cable Ordinance § 4.5(I).

[3]The Cable Act provides:

> In awarding a franchise or franchises, a franchising authority shall assure that access to cable service is not denied to any group of potential residential cable subscribers because of the income of the residents of the local area in which such group resides.

47 U.S.C. § 541(a)(3).

the denial of cable service on the basis of income status.[4]  Pursuant to this claim, Adelphia asserted that Martin County permitted Comcast to serve only select upper-income, high-revenue, low-cost residential communities and to deny service to lower income, high-cost areas of Martin County.  Finally, Adelphia alleged that Martin County was in violation of the Cable Act by refusing to act regarding the renewal of its existing franchise, and requested that the court enter an order mandating that Martin County comply with the Cable Act.

The district court dismissed Adelphia's constitutional claim as well as its claim under § 541 of the Cable Act regarding Comcast's compliance with the ninety percent proportionate service obligation, finding the claims barred under the doctrine of *res judicata,* because this suit presented "identical legal theories premised upon identical facts set forth in the prior action."  The district court also dismissed Adelphia's claim that Martin County had failed to act on its letter requesting renewal proceedings on the ground that the claim was not ripe for adjudication because the complaint "fails to allege that a formal application which met all of the County's requirements was submitted and wrongfully delayed or denied by the County."  Adelphia appeals from both of these rulings and we address each in turn.[5]

II.     *Discussion*

---

[4]The House Report states:

> In other words, cable systems will not be permitted to "redline" (the practice of denying service to lower income areas).  Under this provision, a franchising authority in the franchising process shall require the wiring of all areas of the franchise area to avoid this type of practice.

H.R.Rep. No. 934, 98th Cong.2d Sess. 59, reprinted in 1984 U.S.C.C.A.N. 4655, 4696.

[5]We review the district court's order of dismissal *de novo* and will uphold the dismissal only if it appears beyond a doubt that, viewing the complaint in the light most favorable to the plaintiff, the allegations in the amended complaint of the second suit do not constitute a claim upon which relief may be granted.  *See Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1484 (11th Cir.1994);  *Cannon v. Macon County,* 1 F.3d 1558, 1565 (11th Cir.1993).  The question of *res judicata* is reviewed *de novo, Reahard v. Lee County,* 30 F.3d 1412, 1415 (11th Cir.1994), as are the conclusions of the district court as to whether Adelphia's claim was ripe.  *Richardson v. Alabama State Bd. of Educ.,* 935 F.2d 1240, 1244 (11th Cir.1991).

4

*A.      Res judicata*

In order to prevail on a claim of *res judicata,* the party asserting the bar must prove that (1) there was a prior judgment on the merits, (2) entered by a court of competent jurisdiction, (3) with substantial identity of the parties, (4) involving the same cause of action.  *NAACP v. Hunt,* 891 F.2d 1555, 1560 (11th Cir.1990).  The only issue before us is the fourth factor:  whether the cause of action in this case is the same as that in the prior law suit.  We conclude that it is not.

In determining whether to apply *res judicata,* we " 'must look to the factual issues to be resolved [in the second cause of action], and compare them with the issues explored in' the first cause of action."  *Manning v. City of Auburn,* 953 F.2d 1355, 1359 (11th Cir.1992) (quoting *S.E.L. Maduro v. M/V Antonio De Gastaneta,* 833 F.2d 1477, 1482 (11th Cir.1987) (brackets in original)).  If there has been " 'a[ ] ... modification of significant facts creating new legal conditions, *res judicata* is no defense.' "  *Id.* (quoting *Jaffree v. Wallace,* 837 F.2d 1461, 1469 (11th Cir.1988) (brackets in original)).

In the prior lawsuit, the district court held that Martin County's grant to Comcast of a franchise with a service area limited to one small community did not violate either the Equal Protection Clause or the Florida Level Playing Field Statute because the obligation to maintain the capability of providing service to ninety percent of the residents existed for both Adelphia and Comcast, albeit in different-sized areas.  The district court found that "[w]hile Comcast's obligations to provide service are presently limited to the Summerfield development, the obligations imposed are proportionate with the obligations imposed upon Adelphia, i.e., each cable company has the obligation to serve ninety percent of its service area."  In other words, the court found that Martin County did not violate Adelphia's rights because Martin County imposed on Comcast the same obligations it imposed on Adelphia in proportion to the size of the service area each had selected.[6]

---

[6]Although the district court also noted that requiring Comcast to provide county-wide service would violate County Cable Ordinance § 5.5, which provides that "it is not the intent of this ordinance to either require or prohibit overbuilding," the gravamen of the ruling in the first lawsuit was that Comcast had only a limited service area and that it was required by statute to provide ninety percent service within that limited area.  Overbuilding is the term used to describe systems that offer service to an area already

At the time of the prior lawsuit, Comcast's service area was limited to Summerfield. However, Comcast now has a county-wide service area. Therefore, the factual premise of the present lawsuit differs significantly from the prior one. Consequently, because Martin County now has given county-wide service areas to both Adelphia and Comcast, but only requires Adelphia to service ninety percent of the entire community, we cannot agree with the district court that the legal claims in the two suits arise from the same "operative nucleus of fact." *See Olmstead v. Amoco Oil Co.,* 725 F.2d 627, 632 (11th Cir.1984); RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt.f (1980) ("Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first."); *see also Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 327-28, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) (prior dismissal of antitrust complaint did not bar new antitrust complaint based on conduct occurring after the first judgment); *Wu v. Thomas,* 863 F.2d 1543, 1548-49 (11th Cir.1989) (prior discrimination action did not bar current action for retaliation). Extension of Comcast's service area to the entire county is a new fact which presents a new case to be decided by the district court. Whether a county-wide service area carries with it the concomitant obligation to serve ninety percent of the residents of the county is a different question than whether a limited area carries with it an obligation to service an area greater than the license covers.[7] Accordingly, we hold Adelphia's suit is not barred by *res judicata.*[8]

---

served by another system. There is wide debate as to whether overbuilding is economically cost efficient and whether it reduces or promotes competition. *See* Thomas W. Hazlett, Duopolistic Competition in Cable Television: Implications for Public Policy, 7 Yale J. on Reg. 65, 71-72 n. 34 (1990).

[7]We do not intend to suggest any view whatsoever on the merits of either question.

[8]Because we conclude that the issues here are not identical to those in the prior lawsuit, we likewise reject the arguments of Comcast and Martin County that collateral estoppel applies. *See Durbin v. Jefferson National Bank,* 793 F.2d 1541, 1548-9 (11th Cir.1986) (different cause of action and not identical issues make both *res judicata* and collateral estoppel inapplicable).

We do not address the claims of all the parties that they are entitled to summary judgment. The district court should have the opportunity in the first instance to determine how to reconcile the various provisions of the County Cable Ordinance with other seemingly contradictory provisions of the same ordinance and how to resolve other tensions that may exist among the Cable Act, the Florida Level Playing Field Statute and the County Cable Ordinance as they relate to the facts of this case.

B.      *Ripeness*

We turn now to Adelphia's argument that the district court erred when it dismissed, on grounds of ripeness, its claim that Martin County did not begin proceedings on the renewal of Adelphia's license. To resolve the issue of ripeness we must determine "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Cheffer v. Reno,* 55 F.3d 1517, 1524 (11th Cir.1995).

The district court based its dismissal of Adelphia's complaint based on the fact that Adelphia had never alleged it submitted a formal application as specified by the County Cable Ordinance and Adelphia's franchise agreement with Martin County.[9] Adelphia argues on appeal that this case is ripe because, under the Cable Act, it need not file an application before Martin County is required to act, and indeed, that Martin County must conduct a public hearing at Adelphia's request before Adelphia files its application. Moreover, Adelphia maintains that it did allege the filing of a formal application.

In the Cable Act, Congress detailed a two-stage procedure for renewal of cable operations. 47 U.S.C. § 546. Under § 546(a), the first stage is commenced when either the franchising authority or the cable operator submits "a written renewal notice requesting the commencement of ... a proceeding." 47 U.S.C. §

---

[9]In the franchise agreement between Adelphia and Martin County, Adelphia agreed to be bound by, and "fully comply with all the terms of all agreements and resolutions with the County and further agree[d] to comply with all applicable laws, rules and regulations now in effect or hereafter adopted by Martin County, the State of Florida, the Federal Communications Commission and the United States of America."

7

546(a)(1). This proceeding is to consist of a public hearing at which both the needs of the community as well as past performance of the cable operator can be evaluated and addressed. *Id.* The statute does not delineate any requirements for the form of the notice beyond the requirement that it be in writing. When the cable operator does submit such a written notice, the Cable Act requires that "the franchising authority *shall* commence such a proceeding not later than 6 months after the date such notice is submitted." *Id.* (emphasis added).

Once the first-stage written notice and public hearing have occurred, the second stage under § 546(b) begins:

> *Upon completion of a proceeding under subsection (a) of this section,* a cable operator seeking renewal of a franchise may, on its own initiative or at the request of a franchising authority, submit a proposal for renewal. (Emphasis added).

Under the statute's plain language, it is only after the conclusion of the first-stage public proceeding that an operator may submit a second-stage renewal proposal which would "contain such material as the franchising authority may require...." 47 U.S.C. § 546(b).

The district court embraced the argument that the case was not ripe because Adelphia had not yet submitted a formal proposal for renewal, the type necessary under the second stage. *See* 47 U.S.C. § 546(b). "A review of the Amended Complaint reveals that the Plaintiff fails to allege that a formal application which met all of the County's requirements was submitted and wrongfully delayed or denied by the County," the district court wrote. "Accordingly, the claim alleged in Count I is not ripe for adjudication until such time as Martin County takes action or wrongfully delays action on a formal application which meets all of the requirements set forth by the governing ordinance and the franchise agreement."

Adelphia's complaint, however, was brought under the Cable Act which provides that "[a]ny cable operator whose proposal for renewal ... has been adversely affected by a failure of the franchising authority to act in accordance with the procedural requirements of this section" may file an action in federal court seeking relief. 47 U.S.C. § 546(e)(1). The Act states further that "the court shall grant appropriate relief if

8

the court finds that ... any action of the franchising authority, other than harmless error, is not in compliance with the procedural requirements of this section...." 47 U.S.C. § 546(e)(2)(A). Adelphia's Cable Act claim alleged a fully ripe dispute regarding Martin County's duty to hold a public hearing and the district court was therefore obligated to consider the action under the Cable Act.[10]

Although it is not totally clear, it appears that Martin County is arguing that the County Cable Ordinance and the original franchising agreement between Adelphia and Martin County have established procedures for the renewal of Adelphia's license. Martin County asserts that Adelphia contracted in the franchise agreement to comply with the County Cable Ordinance which mandates that "proposals for franchise renewals shall contain such materials as the [County] may require ..." including more complete paperwork and prepayment of a $10,000 non-refundable application fee to defray the cost of processing the application. County Cable Ordinance § 7 1/2-21(c). This may be so under the franchise agreement but this still does not resolve the lack of compliance with the Cable Act or any tension between the two. Adelphia states in its complaint in the second suit that it submitted the requisite notice on June 12 and Martin County failed to commence the first-stage formal proceedings within the six months following receipt of that notice. The fact that, as Martin County argues, on March 7, 1996, Adelphia submitted an inadequate formal application is inconsequential under the Cable Act. Thus, we reverse the dismissal of Adelphia's complaint on the grounds of ripeness as well.

REVERSED and REMANDED for further proceedings consistent herewith.

---

[10]It is clear from the statute's plain language that judicial relief may be predicated upon either "a failure of the franchising authority to act" or a "final decision of a franchising authority." 47 U.S.C. § 546(e)(1)-(f). Under the Cable Act, "[a]ny cable operator whose proposal for renewal ... has been adversely affected by a failure of the franchising authority to act in accordance with the procedural requirements of this section" may file an action in the U.S. District Court seeking relief. 47 U.S.C. Section 546(e)(1). In addition, the Cable Act provides that if—at any point before a formal application is filed—a franchising authority fails to comply with the franchise renewal process, the operator is entitled to file an interlocutory appeal. *Id.*