**COMCAST OF CALIFORNIA II, L.L.C., Plaintiff,**

v.

**CITY OF SAN JOSE, CALIFORNIA, Defendant.**

No. 5:03–CV–02532–RS.

United States District Court,
N.D. California.
San Jose Division.

Sept. 29, 2003.

John Louis Carlton, Arnold & Potter, Los Angeles, CA, Norman Mark Sinel, Arnold & Potter, Washington, DC, Tricia Anne Cross, Arnold & Potter, Los Angeles, CA, for Plaintiff.

Joseph Van Eaton, Washington, DC, Michael R. Groves, San Jose City Attorney's Office, San Jose, CA, William L. Lowery, Miller & Van Eaton, San Francisco, CA, Allison L. Driver, James N. Horwood, Speigal & McDiarmid, Washington, DC, Kevin E. Smith, Braun & Blaising, Sacramento, CA, Peter J. Hopkins, Spiegal & McDiarmid, Washington, DC, for Defendant.

Russell Naymark, Communications Workers of America, AFL–C, Sacramento, CA, for Intervenor.

## ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

SEEBORG, United States Magistrate Judge.

### I. INTRODUCTION

In order to establish a national policy concerning cable communications which "assures that cable systems are responsive to the needs and interests of the local community" and "protects cable operators against unfair denials of renewal," Congress enacted the Cable Communications Policy Act of 1984. 47 U.S.C. § 521 *et seq.* (referred to herein as the "Federal Cable Act" or "FCA"). The Act establishes a process whereby a cable operator may seek renewal of its franchise by submitting a written request and engaging in formal and/or informal renewal proceedings. In this action, Plaintiff Comcast of California II, L.L.C. ("Comcast") challenges the legality of the formal renewal proceeding that has been instituted by the Defendant City of San Jose ("City"). Comcast seeks to halt the process currently set to begin

before a designated hearing officer on the grounds that the proposed procedure violates Comcast's constitutional rights to free speech and due process, as well as the provisions of the FCA. Comcast seeks injunctive relief to stop the proposed hearing and to require the City to draft a new hearing procedure which complies with the FCA and the federal and state constitutions.

The City opposes the motion for injunctive relief and argues that the process it has established fulfills the requirements established by Congress in the FCA and adequately safeguards all of Comcast's constitutional rights. The City also contends that Comcast's request for relief under the FCA is not ripe since the Act permits judicial review only after final denial of a renewal application or where a cable operator has been adversely affected by a failure of the franchising authority to follow the Act's procedural requirements. Neither of these triggering events, according to the City, have occurred in this case.

The Court permitted the Alliance for Communications Democracy, et al. ("Alliance"), as well as the National Cable & Telecommunications Association ("NCTA") and the California Cable & Telecommunications Association ("CCTA"), to file amicus curiae briefs in this case. Alliance's amicus brief is filed in opposition to Comcast's motion for an injunction, while the amicus brief filed by NCTA and CCTA is offered in support of the motion.

Comcast's motion for entry of a preliminary injunction was heard by the Court on September 17, 2003. Based on all papers filed to date, including the amici briefs referenced above, as well as on the oral argument of counsel, the Court denies Comcast's motion for the reasons set forth below.

## II. BACKGROUND

In December of 1985, Comcast's predecessor cable operator was granted a fifteen year cable franchise by the City. Under the terms of this agreement, the franchise was scheduled to expire on December 31, 2000. On February 25, 1998, the cable operator submitted a letter to the City requesting that it initiate formal renewal procedures pursuant to 47 U.S.C. § 546 of the FCA. Section 546(a)(1) requires that a franchising authority conduct a proceeding to identify future cable-related needs and interests and to review past performances of cable operators. The cable operator also requested that the City conduct informal renewal procedures, as contemplated by § 546(h).

Based on the cable operator's request, as well as the requirements of § 546(a)(1), the City conducted a study, identified its future needs and interests, reviewed the operator's past performance, and issued a draft 84–page "Needs and Interest Report" in June of 2001. The City sought comments on the Report and Comcast's predecessor, AT & T, submitted a response. The City considered the response and addressed it in a Final Report, issued on June 11, 2002. The San Jose City Council ("Council"), the franchising authority in this case, adopted the needs and interests findings in the Final Report, concluded the first stage of the formal renewal process, and issued a Request For a Renewal Proposal ("RFRP"), as required under 47 U.S.C. § 546(b). The RFRP describes a model that would satisfy all the needs and interests identified by the City. The City contends that a cable operator is not required to follow the model, but must satisfy the needs and interests identified by the City and provide certain information, including financial disclosures.

On September 11, 2002, AT & T submitted its "Formal Proposal for Renewal of

Cable Television Franchise." The City contends that the proposal did not provide all of the information required. Specifically, the City requested certain financial information which the cable operator declined to provide. Nevertheless, the City assumed that it was required either to accept or preliminarily to reject the proposal within four (4) months, pursuant to 47 U.S.C. § 546(c)(1). On November 18, 2002, Comcast and AT & T merged to form the Comcast entity named as Plaintiff in this litigation. Shortly before the Council was to act regarding AT & T's proposal, Comcast asked the City to delay action. On December 10, 2002, the Council adopted a resolution of preliminary denial, but provided that the effective date of the denial could be deferred by agreement until January 31, 2003.

The parties signed an agreement of deferral. However, the informal renewal negotiations which had been commenced in 1999 failed to resolve the renewal issues. Therefore, the preliminary denial by the Council became effective on January 31, 2003. The preliminary denial resolution authorized the City Manager to commence the formal administrative hearing required by 47 U.S.C. § 546(c). Pursuant to the resolution, a hearing officer was selected and appointed. A set of Rules and Procedures ("Rules") was developed and sent to Comcast for comment. Comcast returned its comments to the Rules, noting its objections to the proposed procedure. The Rules provide that the hearing officer will conduct the evidentiary phase of the proceeding and will then make a recommendation to the Council. Comcast contends that this procedure is improper because only the City Council itself, as the franchising authority, may conduct the hearing.

After unsuccessfully attempting to negotiate with the City to change the Rules, Comcast filed a complaint against the City in this Court, seeking declaratory and injunctive relief. In its complaint, Comcast requests that the Court enjoin the City from continuing its formal renewal proceeding. Comcast also seeks a declaration that the City's RFRP, Model Ordinance, and Rules violate the FCA, as well as both the federal and state constitutions.

More specifically, Comcast contends that the RFRP is illegal because it demands goods and services which exceed the scope and purpose of the FCA. In particular, Comcast argues that the City improperly demands: (1) up to 10 channels to be designated for public, educational or governmental ("PEG") use; (2) non-cable services, such as access to the Internet; (3) a full service telecommunications network; (4) specific fiber transmission technology; and, (5) a parental control device at no charge to the subscriber. Comcast contends that these requirements exceed the scope of the City's authority and contravene the requirements of the FCA.

In addition, Comcast argues that the Rules which the City intends to utilize at the upcoming scheduled hearing are illegal because they: (1) fail to provide adequate notice to Comcast of the City's claims which support its preliminary denial of the renewal application; (2) are not grounded in any state or federal law; (3) improperly delegate authority to a hearing officer; (4) fail to establish a process which affords Comcast an opportunity to participate in a hearing before the City Council; and, (5) fail to delineate the claims, evidence, and defenses which Comcast will be permitted to present at the hearing.

Apart from the FCA's requirements, Comcast also asserts that the City's proposed hearing procedure violates Comcast's constitutional rights to free speech and due process. Comcast contends that the City's requirements regarding the number, use, location, management of, and trigger for, the PEG channels violate the

First Amendment. Comcast also argues that its rights to due process are not afforded or protected by the hearing procedure because it is not guaranteed adequate notice of the claims that the City intends to assert in support of its preliminary denial of Comcast's renewal application. Comcast additionally alleges that it is not afforded an opportunity to be heard since the City's Rules do not provide that Comcast may appear at a hearing before the City Council. As a result of these alleged violations, Comcast contends that it "stands to suffer significant and immediate irreparable harm to its First Amendment rights and financial interests if the administrative process is not enjoined." Comcast's Memorandum at p. 29, lines 1–3.

The City opposes Comcast's motion for injunctive relief on several grounds. First, the City argues that Comcast's request is untimely under the FCA because a final decision has not been issued regarding the request for renewal. The City contends that the FCA does not permit interlocutory judicial review, except for cases in which a franchising authority has refused to act on a cable operator's application for renewal, thereby effectively "failing to follow the procedural requirements" of the Act.

Second, the City contends that Comcast must proceed within the statutory framework of the FCA and cannot attempt to "remove" this case from the guidelines set forth therein by alleging violations of its constitutional rights. Rather, the City argues that Comcast's constitutional rights must be analyzed within the confines of the constitutional rights afforded under the FCA.

Third, even assuming that Comcast's action was timely and proper, the City notes that Comcast cannot show that it has been or will be irreparably harmed if the administrative process is permitted to continue. The City notes that the status quo is and

will be preserved throughout this entire process. Comcast has been and continues to be the sole cable operator in the City of San Jose. The City agrees that Comcast will serve in this capacity, either under a new renewal agreement or until a final denial has been issued and Comcast has exhausted all avenues of appeal.

Finally, the City argues that Comcast cannot show that it is likely to prevail on the merits of any of its claims for relief. According to the City, Comcast's FCA claim is untimely and, therefore, cannot be reviewed by the Court. Further, the City contends that Comcast's constitutional claims are meritless since the City is not infringing upon Comcast's First Amendment rights and the administrative hearing procedure established by the City affords Comcast its appropriate due process rights to adequate notice and an opportunity to be heard.

### III. STANDARDS

 In the Ninth Circuit, in order to obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions which address the merits of the case and the balance of hardships tips sharply in its favor, with at least a fair chance of success on the merits. *Senate of California v. Mosbacher,* 968 F.2d 974, 977 (9th Cir.1992). The Ninth Circuit has stated that "these two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1200–01 (9th Cir.1980).

 In addition, under any formulation of the test, the moving party must show that there exists a significant threat of irreparable harm. *American Passage Me-*

*dia Corp. v. Cass Communications, Inc.,* 750 F.2d 1470, 1473 (9th Cir.1985) (citations omitted). If the moving party fails to make this showing, the court need not decide whether the party is likely to succeed on the merits. *Oakland Tribune, Inc. v. Chronicle Pub. Co.,* 762 F.2d 1374, 1376 (9th Cir.1985).

## IV. DISCUSSION

Comcast seeks to enjoin the City from conducting its formal administrative renewal proceeding before a hearing officer. Comcast challenges the process established by the City on both statutory and constitutional grounds. The City responds that its administrative process passes both statutory and constitutional muster.

In addition to the parties' arguments, amici briefs were presented in this case. As noted above, the NCTA and CCTA filed a brief in support of Comcast's motion for injunctive relief, while the Alliance filed a brief in opposition to the motion. These briefs essentially support the positions of Comcast and the City, respectively. The Court accordingly reviews the City's administrative renewal process in the context of the requirements of the FCA, as well as the federal and state constitutions, to ascertain whether injunctive relief is warranted at this time.

### A. Federal Cable Act

Comcast seeks judicial review of the hearing process implemented by the City of San Jose regarding Comcast's application for renewal of its cable franchise pursuant to 47 U.S.C. § 546[1]. Section 546(e)(1) sets forth the availability of judicial review of the renewal process:

(1) Any cable operator whose proposal for renewal has been denied by a final decision of a franchising authority made pursuant to this section, or has been adversely affected by a failure of the franchising authority to act in accordance with the procedural requirements of this section, may appeal such final decision or failure pursuant to the provisions of section 555 of this title.

■ It is clear that subsection (e) of § 546 provides two separate bases for judicial review. The first basis for judicial review occurs when a cable operator has been denied renewal by a final decision of a franchising authority. The second basis for review is available when an operator has been adversely affected due to the franchising authority's failure to follow the procedural requirements set forth in § 546. Courts which have analyzed this statutory language have reached this same conclusion. *See e.g., Southeast Fla. Cable, Inc. v. Martin County, Fla.,* 173 F.3d 1332, 1338 (11th Cir.1999); *Cablevision of the Midwest, Inc. v. City of Brunswick,* 117 F.Supp.2d 658, 661–62 (N.D.Ohio 2000); *Rolla Cable Systems, Inc. v. City of Rolla,* 745 F.Supp. 574, 577 n. 3 (E.D.Mo. 1990).

In this case, Comcast seeks judicial review based on its contention that the franchising authority has "failed to act in accordance with the procedural requirements of this section," as provided in § 546(e)(1). Comcast claims that the fundamental aspects of § 546 require that it be provided with: (1) adequate notice; (2) full and fair participation in the administrative renewal proceeding; (3) the issuance of a written

---

**1.** Comcast also seeks judicial review based on § 47 U.S.C. § 555. This section does not assist Comcast in this case, however, since it provides that a cable operator who has been adversely affected by any final determination made by a franchising authority may commence an action in federal or state court. Comcast does not contend that a final determination has been made. Therefore, the provisions of § 555 are not triggered in this instance.

decision by the franchising authority; and, (4) provisions which allow for federal review.

According to Comcast, the City's administrative hearing procedures fail to afford it any of the due process rights enumerated in § 546. Therefore, Comcast contends that § 546(e)(1) permits judicial review of the procedural requirements imposed by the City in this case. Comcast argues that Congress added the alternative language in this subsection specifically to permit judicial review of administrative proceedings so that cable operators are not treated unfairly by franchising authorities during the renewal process.

The City responds that § 546 does not permit judicial review in a case such as this where a franchising authority is conducting an administrative hearing. Instead, the City argues that the language set forth in subsection 546(e)(1) permits judicial review solely in those rare instances where a franchising authority has failed to act on a cable operator's request for renewal. Since such a situation is not present in this case, the City concludes that judicial review is not available to Comcast at this juncture.

The City's argument is generally consistent with the few cases to have addressed the issue. Those courts determined that a cable operator could seek relief under § 546(e)(1) in situations where the operator had submitted a request for renewal and the franchising authority had refused to initiate the process and to follow the procedural requirements set forth in § 546. *Southeast Fla. Cable, Inc. v. Martin County, Fla.*, 173 F.3d at 1338; *Cablevision of the Midwest, Inc. v. City of Brunswick*, 117 F.Supp.2d at 661–62; *Rolla Cable Systems, Inc. v. City of Rolla*, 745 F.Supp. at 577 n. 3; *FrontierVision Oper-*

*ating Partners, L.P. v. The Town of Naples*, 2001 WL 220192, *4 (D.Me. March 7, 2001). These cases do not discuss judicial review under the FCA in the context of an ongoing administrative hearing, as is presented in this case.

The parties' positions regarding the import of the language set forth in § 546(e)(1) are diametrically opposed. On the one hand, Comcast contends that the statute permits a cable operator to seek judicial review *any* time that it contends a franchising authority is not following the procedural requirements.[2] On the other hand, the City argues that no interlocutory judicial review is permitted, except in those rare instances where a franchising authority completely fails to act. Neither position seems consistent with Congressional intent.

It appears unlikely that Congress would expect the courts to micro-manage an administrative hearing, a situation that could occur if Comcast's position was adopted. Congress stated in the FCA that it sought to "preserve the critical role of municipal governments in the franchise process." H.R.Rep. No. 98–934, at 19, reprinted in 1984 U.S.C.C.A.N. at 4656. The House Report states that it is the Committee's intent that the franchise process occur at the local level so that city officials who are most familiar with the city's needs can work together with a cable operator to tailor a system that meets those needs. H.R.Rep. No. 98–934, at 24, reprinted in 1984 U.S.C.C.A.N. at 4661.

Yet, if the City's position was adopted, judicial intervention would not be permitted absent a situation wherein a franchising authority refuses entirely to act on a cable operator's application for renewal. If this was the only scenario under which Congress contemplated interlocutory re-

---

**2.** Comcast concedes that interlocutory appeals could not occur in instances of "harm-less error," although such a situation might itself require judicial determination.

view, then the alternative language set forth in § 546(e)(1) appears unnecessary since a cable operator would have a "final decision" based on the fact that no further action would be undertaken by the franchising authority.

A more appropriate interpretation of the statute appears in the plain language of § 546(e)(1)—which provides that judicial review is permitted when a cable operator has been adversely affected by a failure of the franchising authority to act "in accordance with the procedural requirements of this section." The procedural requirements of this section state that a cable operator shall be afforded: (1) adequate notice; (2) fair opportunity for full participation, including the right to introduce evidence, to require the production of evidence, and to question witnesses; and, (3) a transcript shall be made of the proceeding. *See* 47 U.S.C. § 546(c)(2). Under this interpretation, therefore, interlocutory judicial review would be available when a cable operator is adversely affected by one of the specifically enumerated procedural defects identified by the statute.

The evidence presented by the City shows that it has complied with the procedural requirements of § 546 to date. The City has provided Comcast with adequate notice of the basis for its preliminary denial and has also provided a fair opportunity for full participation at the hearing, both before the hearing officer and the Council. Therefore, Comcast fails to establish that the City's actions contravene the FCA's procedural requirements.

In addition, Comcast cannot show that it "has been adversely affected" by a failure of the City to follow the procedural requirements of the statute. Comcast argues that adverse impact[3] has been established through its monetary investment in the San Jose cable system to date—an investment which Comcast cannot recoup in the event that its renewal application is denied. Comcast also contends that, in the context of a First Amendment violation, adverse impact is presumed. Neither of these arguments is persuasive.

Although Comcast is correct that it may lose its monetary investment, an event which will only occur if Comcast is ultimately denied renewal, Comcast has no entitlement to renewal. Therefore, its business decision to invest money into a San Jose cable system is just that—a business decision made by Comcast. Such decision cannot be used against the City to establish adverse impact.

Nor is adverse impact presumed where First Amendment claims are alleged. Rather, as discussed in greater detail below, Comcast must show that its speech is actually being infringed in order to obtain injunctive relief. *Alliance of Auto. Mfrs. v. Hull,* 137 F.Supp.2d 1165 (D.Ariz.2001). At this juncture, Comcast has failed to sustain this burden. Again, since the administrative hearing has not yet occurred, Comcast can only establish that its speech "may be" adversely affected if the City ultimately adopts regulations which infringe upon Comcast's free speech rights.[4]

---

3. Comcast's arguments are advanced in support of the "irreparable injury" requirement for injunctive relief. However, these arguments are equally applicable to the analysis of adverse impact.

4. It is important to underscore that the administrative process has not yet commenced in this instance. Accordingly, the procedural "defects" to which Comcast points may or may not occur. While Comcast notes that such procedures are in place and the hearing officer is not empowered to alter them, the Council retains the authority to remand the matter in the event that it is not satisfied with the record received. In addition, the City Manager may make necessary changes to the process. Comcast cannot, therefore, predict

■ Even assuming Comcast has been adversely affected, it fails to establish that it will likely succeed on the merits of its procedural claims, namely, that it has been denied adequate notice and a fair opportunity for full participation. The record submitted indicates that Comcast has received such notice, as well as a right to participate fully in the proceedings, including the opportunity to introduce evidence, to require the production of evidence and to question witnesses. *See* Behan Declaration, Exh. G.[5]

Therefore, Comcast's request for judicial intervention pursuant to 47 U.S.C. §§ 546(e)(1) and 555 is denied. Comcast has failed to establish that the franchising authority has either issued a final adverse decision or that Comcast has been adversely affected by a failure of the franchising authority to act in accordance with the procedural requirements set forth in § 546 of the FCA.

Having failed to meet its burden under the FCA, Comcast cannot make a showing of either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions which address the merits of the case with the balance of hardships tipping sharply in its favor. Accordingly, preliminary injunctive relief is not warranted as to Comcast's FCA claim.[6]

However, this finding does not end the inquiry as to whether Comcast is entitled to entry of a preliminary injunction in this case. Comcast also seeks injunctive relief

pursuant to 42 U.S.C. § 1983 based on alleged violations of its constitutional rights. Therefore, the Court must now turn to Comcast's claims that its constitutional rights to free speech and due process are violated by the City's administrative renewal process, thereby warranting injunctive relief.

### B. Constitutional Rights

Comcast contends that the City of San Jose has violated both its federal and state constitutional rights to free speech and due process as a result of the procedures and rules the City has implemented in connection with Comcast's request for cable renewal. The City argues that none of Comcast's constitutional rights have been violated. Comcast's constitutional claims are addressed separately below.

### 1. Free Speech

■ The Supreme Court held in *City of Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986) that a cable television operator has "First Amendment interests." Comcast claims that many of the City's cable renewal requirements violate its First Amendment rights to free speech. Specifically, Comcast alleges that the City impinges upon the First Amendment by requiring: (1) that Comcast provide up to ten (10) PEG channels, as well as by imposing burdensome mandates on Comcast regarding the trigger, equipment, location, and management of these PEG channels;

---

with certainty the fate of its procedural objections, rendering injunctive relief at this juncture particularly problematic.

**5.** The City filed objections to portions of the Behan Declaration, as well as to portions of other declarations submitted by Comcast. The City requests that the Court strike the referenced portions of such declarations. Comcast filed a response to the City's objections. Based on the papers filed, the Court

overrules the objections and considers the declarations in their entirety.

**6.** This finding does not mean that the regulations which the City *may* impose on Comcast automatically will be deemed to be in compliance with the FCA. The Court does not reach this issue today since it finds only that Comcast may not assert an FCA claim at this point in the proceedings.

(2) that Comcast provide non-cable services, such as access to the internet; (3) that Comcast provide a full service telecommunications network; and, (4) that Comcast provide specific transmission technology.[7]

At the outset, the City takes issue with Comcast's characterization of these categories of goods and services as "requirements." For example, the City notes that there are no requirements contained in the RFRP regarding cable modem, transmission technology, and/or access to the internet other than for permitted educational and governmental uses permitted under the Act. As to those items that are "required," the City argues that all such items comply with the FCA and that none impinge upon Comcast's First Amendment rights.

The City also states that its Model is just that—a model—which simply provides one example of a cable system that incorporates all of the City's needs and interests, as identified in its Report. According to the City, Comcast may choose to utilize a system different than the one proposed in the Model and still obtain renewal of its franchise.

 Comcast correctly states that content neutral cable regulations such as the ones at issue in this lawsuit can withstand First Amendment scrutiny if they, "further an important or substantial government interest which is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Turner Broadcasting, System, Inc. v. FCC*, 512 U.S. 622, 662, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (quoting *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673,

20 L.Ed.2d 672 (1968)). It argues that the regulations must be "narrowly tailored" so that they do not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

Comcast opines that the City cannot show an important or substantial interest in the requirements contained in the RFRP and the Model Ordinances. Even assuming such showing could be made, Comcast argues that the City fails to establish that its regulations are "narrowly tailored" to serve these interests. Comcast contends that this Court previously struck down numerous government-mandated conditions under the First Amendment in the context of a city's denial of a cable operator's renewal application. *Group W Cable, Inc. v. City of Santa Cruz*, 669 F.Supp. 954 (N.D.Cal.1987).

In opposition to Comcast's First Amendment argument, the City points out that similar requirements imposed by cities under the FCA have been upheld against facial First Amendment challenges. *Time Warner Entertainment Co. v. FCC*, 93 F.3d 957 (D.C.Cir.1996). The *Time Warner* court concluded that provisions such as the ones at issue here are content-neutral, serve an important purpose unrelated to the suppression of free speech, and are narrowly tailored. Therefore, no First Amendment violations were found in that case.

The cases cited and relied upon by Comcast do not address the circumstances presented in this action, namely, none of the prior cases found First Amendment violations *prior* to a franchising authority's denial of a cable operator's renewal appli-

---

7. Comcast also contends that many if not all of these requirements violate the FCA. However, since the Court finds that Comcast may

not raise its FCA claim at this time, it does not address these specific requirements in that context.

cation. Instead, the cases which have discussed this situation all involved scenarios in which the cable operator was denied renewal, a situation which clearly implicated the operator's First Amendment rights. This is precisely the situation which occurred in *Group W*, the case relied on perhaps most heavily by Comcast to support its First Amendment claim.

Group W was denied renewal of its cable franchise and the City of Santa Cruz awarded the franchise to another provider. Group W argued that the policy of Santa Cruz to award only a single franchise violated its constitutional rights to free speech. The district court agreed and held that Santa Cruz could not adopt a regulation which permitted only one cable operator and which required that certain programming be made available. *Group W* did not address the issue presented in this case, namely, whether provisions contained in an RFRP violate the First Amendment. More importantly, in *Group W* the operator was actually *denied* a renewal of its franchise, a fact which has not occurred, and may not ever occur, in this case.

Here the question is whether items contained in a City's RFRP pass constitutional muster under the First Amendment. In reaching this determination, past precedent has determined the standard under which this constitutional claim must be analyzed. As Comcast concedes, the RFRP requirements at issue here are content neutral cable regulations. Therefore, the regulations are constitutionally permissible if they serve important government interests which are unrelated to the suppression of free expression and are no more burdensome than necessary to achieve such interests. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. at 662, 114 S.Ct. 2445.

The renewal requirements requested by the City in this case are content-neutral,

serve the important government interests identified in the "Needs and Analysis Report" provided to Comcast, and appear to be narrowly tailored to achieve these needs. *See* Behan Decl., Exh. G. Therefore, these requirements do not violate Comcast's First Amendment rights nor "seriously infringe or curtail" Comcast's expressive rights. *Sammartano v. First Judicial Dist. Court in and for the County of Carson City*, 303 F.3d 959 (9th Cir. 2002). Accordingly, contrary to Comcast's contention, there is no *presumption* of irreparable harm in this case. *Id.* at 973–974.

Based on this finding, Comcast is not entitled to injunctive relief regarding its First Amendment claim. Comcast has failed to show a combination of probable success on the merits and the possibility of irreparable harm or the existence of serious questions which address the merits of the case with the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits. *Senate of California v. Mosbacher*, 968 F.2d at 977.

**2. Due Process**

 Finally, Comcast argues that both its federal and state constitutional rights to due process have been violated by the hearing procedure and Rules implemented by the City of San Jose. The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property," as those words have been interpreted and given meaning over the life of our republic, without due process of law. *See Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir.1995).

 The touchstone of due process is protection of the individual against arbitrary action of government, whether the

fault lies in a denial of fundamental procedural fairness (i.e., denial of procedural due process guarantees) or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective (i.e., denial of substantive due process guarantees). *See County of Sacramento v. Lewis,* 523 U.S. 833, 845–46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

 Once a protected interest is established, either through the Due Process Clause itself or through a state statute or regulation, the court must determine what process is due before the interest may be taken away. *See Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Neal v. Shimoda,* 131 F.3d 818, 830 (9th Cir. 1997); *Hewitt v. Grabicki,* 794 F.2d 1373, 1380 (9th Cir.1986) (same). An essential principle of due process is that a deprivation of life, liberty or property " 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citation omitted). To determine what process is due, the court must consider three factors: " 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " *Los Angeles v. David,* 538 U.S. 715, 123 S.Ct. 1895, 1896, 155 L.Ed.2d 946 (2003) (per curiam) (quoting *Mathews,* 424 U.S. at 335, 96 S.Ct. 893).

Comcast contends that the City's administrative process violates Comcast's due process rights by: (1) failing to provide Comcast with notice of the basis for its preliminary decision to deny renewal; (2) appointing a hearing officer to oversee the hearing process; (3) granting the hearing officer unfettered discretion to grant or deny Comcast's renewal proposal; (4) reserving the right to permit the City Manager the ability to adopt additional procedures; and, (5) placing arbitrary limits on the quantum and timing of the production of evidence.

Review of the proposed administrative procedures reflect, to the contrary, that Comcast's due process rights are protected under the process it has been accorded in this case. The City has informed Comcast that it will require consideration of all four (4) FCA standards at the hearing. It has also provided Comcast with a list of all past performance deficiencies; all needs and interests identified by the City; and has identified specific issues of concern to Comcast. As the City points out, the FCA does not require that the "franchising authority" in the form of the Council conduct the evidence gathering aspect of the administrative process, and indeed such a mechanism would make little practical sense.[8] Moreover, the hearing officer is not granted unfettered discretion in making the recommendation to the franchising authority but is bound by the requirements set forth in the renewal standards of § 546(c) of the FCA. The City Manager is permitted to ensure compliance with the FCA. There is no showing that City Manager has or will violate Comcast's due process rights. Finally, the limits on timing

8. The City's day-to-day operations could come to a grinding halt if the Council was required to conduct an administrative hearing in this case, a process which it states could take several weeks to complete.

and amount of discovery are consistent with Local Federal Rules and allow for the cable operator to have full opportunity to question witnesses.

In short, Comcast is being provided with notice and an opportunity to be heard, both by a hearing officer and the City Council, prior either to the acceptance or denial of its application for franchise renewal. Therefore, under these circumstances, Comcast has failed to show a denial of its due process rights. Based on this finding, Comcast cannot show that it is likely to succeed on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in its favor with respect to its claim that it has been denied its constitutional due process rights. Accordingly, Comcast is not entitled to a preliminary injunction based upon its constitutional claims.

## V. CONCLUSION

For the reasons set forth above, the Court denies Comcast's motion for entry of a preliminary injunction in this case. Comcast's claim under the FCA is not ripe for judicial review since the City of San Jose has not denied Comcast's application for renewal, nor has Comcast been adversely affected by the City's alleged failure to follow the procedural mandates of 47 U.S.C. § 546. Therefore, Comcast's request for preliminary injunctive relief premised upon the FCA is denied.

With respect to Comcast's remaining claims under 42 U.S.C. § 1983 for violations of its constitutional rights to free speech and due process, Comcast has failed to sustain its burden of showing either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions which address the merits of the case with the balance of hardships tipping sharply in its favor, and at least a

fair chance of success on the merits. *Senate of California v. Mosbacher,* 968 F.2d at 977. Comcast's request for a preliminary injunction grounded on its constitutional claims similarly must be denied.